STIGLITZ *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—DETROIT CHARTER—TAX SALES—RELATIONS BETWEEN CITY AND TAX PURCHASER ARE CONTRACT RELATIONS.

Under the charter of the city of Detroit providing for the sale of delinquent tax lands, the city contracted to give the purchaser a deed in compliance with the terms of the purchase at the tax sale, and to that extent the relations between the city and the tax purchaser are contract relations.

2. SAME—BREACH OF CONTRACT—EXECUTION OF TAX DEED MAY BE SPECIFICALLY ENFORCED.

Under the charter it is the duty of the city controller

[1]Municipal Corporations, 28 Cyc. p. 1722 (Anno); [2]Id., 28 Cyc. pp. 1722, 1727.

to execute the deed, in the doing of which he would act in a governmental capacity, and on his refusal to execute it the courts are open to the purchaser to compel specific performance, but damages as for breach of contract are not recoverable because not provided for in the law.

3. SAME—CITY MAY NOT CREATE OTHER LIABILITY THAN LAW PROVIDES.

In the sale of delinquent tax lands under its charter, the city of Detroit cannot go further, or create any different liability, than the law provides.

Error to Wayne; Dunham (Major L.), J., presiding.    Submitted April 20, 1927.    (Docket No. 37.) Decided June 6, 1927.    Rehearing denied October 3, 1927.

Assumpsit by Lillian Stiglitz against the city of Detroit for an alleged breach of contract to convey property sold for nonpayment of taxes.    Judgment for plaintiff on a directed verdict.    Defendant brings error.    Reversed and judgment entered for defendant.

*Walter Barlow* (*Charles P. O'Neil*, of counsel), for appellant.

*Harold M. Shapero* (*Samuel Shapero*, of counsel), for appellee.

SNOW, J.    It is provided by the charter of the city of Detroit that land may be sold at public auction for the nonpayment of taxes "for the lowest term of years at which any person shall offer to take the same." The charter in effect prior to June 27, 1918, gave one year after sale to redeem, and upon failure so to do the purchaser was entitled to "a deed for the conveyance of such real estate for the term for which the same was sold."    The new city charter, in effect since the date above mentioned, provides that a purchaser shall not receive his deed until six months after the

---

[a]Municipal Corporations, 28 Cyc. p. 1718 (Anno).

expiration of the year, and after having given the owner and others interested a six months' notice of the sale and intention to apply to the controller for a deed at the end of such period.

The plaintiff is the assignee of tax certificates of purchase under the old charter, and at the end of the year demanded from the city controller her deeds. This, however, was after the new charter providing for a six-months notice to the owner had come into effect. The deeds were refused by the city controller pending the settlement by the courts of the question of whether or not, under the circumstances, the old or the new charter should control. It was soon thereafter held by this court that the old charter should govern, and that a purchaser was entitled to his deed at the end of the year. *Rott* v. *Steffens,* 229 Mich. 241 (38 A. L. R. 224).

Since this decision the city has always stood ready to give the deeds, but they have never been demanded or requested by plaintiff, and she denies she is required to take them. But she claims that, inasmuch as she was entitled to them when first demanded, their refusal by the controller amounted to a breach of contract on the part of the city, for which she may recover damages. In this action against the city to recover such damages she received a directed verdict and judgment for $118,627.12, and defendant brings error.

Plaintiff claims that the old charter, under which the tax sale here was originally held, authorizing the controller to execute deeds to the purchasers at such sales, by virtue of our holding in *Rott* v. *Steffens,* *supra,* created an ordinary contract between the city and plaintiff to the effect that she should be entitled to a deed or lease at the end of one year, and that if it were not given her it followed she would be entitled to the natural damage that would flow from such refusal or breach of the contract.

It was never intended by laws providing for the sale of delinquent tax lands that a government agency should incur any obligation to the payer of delinquent taxes other than that expressly provided by the law itself.   The charter under consideration in the instant case clearly provided for the giving of a deed in compliance with the terms of the purchase at the tax sale.   To this extent it contracted with the purchaser, *i. e.,* it was bound to give its deed at the end of a year from the date of sale, as the law provided. The law made the city controller the particular officer to execute this deed.   He acted solely in a governmental capacity.   He should have given it, and upon his refusal the courts were open to the plaintiff to compel him to perform his duty.   4 Cooley, Taxation (4th Ed.), § 1605.   No other course of procedure was provided her.   The city can be compelled through its officers to comply with the law, but because of the failure or refusal of one of such officers to perform his duty no obligation or penalty not provided by law is thereby imposed upon it.

Plaintiff calls our attention to a number of authorities holding that relations of this character between the municipal corporation and a tax-title purchaser are contract relations.   They are, but only to the extent provided by the law which permits them.   This is made plain in *Hull* v. *State,* 29 Fla. 79 (11 South. 97, 30 Am. St. Rep. 95), cited by plaintiff, in which it is said:

"The terms of the contract, in so far as the rights of the purchaser, and the duties or obligations of the State, are to be found in the law authorizing the sale, or under which it was made."

The law authorizing the sale in the instant case fixes the obligation of the city to execute its deed.   To this extent it is a contract obligation, which may be specifically enforced.   It is not such an obligation,

however, as may be created by contract between individuals.    The municipality cannot go further, nor create any different liability than the law provides. It is said in 4 Cooley, Taxation (4th Ed.), § 1553, pp. 3045, 3046:

"The tax purchaser buys under the operation of the rule *caveat emptor*, and under common-law rules would get nothing unless he got the land itself.    In the absence of an express statute, if the tax title proves to be worthless, the tax purchaser cannot recover the money paid by him either against the officer, the owner of the land, or the tax district which collected and used the tax; and this is so even though the taxes were lawfully assessed and were paid by his purchase."

And see *Harding* v. *Auditor General,* 136 Mich. 358; also 3 Thompson on Real Property, § 2777, p. 933, where it is said:

"Tax titles are to some extent uncertain, and usually depend upon numerous contingencies.    The rule of *caveat emptor* applies with great strictness to a purchaser at a tax sale; and if he fails to secure a good title to the property he attempts to purchase, because of the invalidity of the tax sale, he cannot recover the amount paid therefor unless some statute expressly provides such remedy.    The purchaser at such sale usually buys at a nominal price, and assumes the liability of having his title proved to be worthless.    If he gets nothing by his purchase, he has, in the absence of a statutory provision, no recourse upon any one."

"There are no equities in favor of a tax deed holder as against the owner of the land.    His rights are statutory."    *Taylor* v. *Adams,* 89 Kan. 716, 719 (132 Pac. 1002); citing *Harris* v. *Defenbaugh,* 82 Kan. 765, 771 (109 Pac. 681).

"It is the general rule that statutes providing for taxation are to be strictly construed as against the State and in favor of the taxpayers, and the burdens and liabilities which they impose are to be kept within the strict letter of the law, and not extended beyond its clear terms by any inference, implication, or analogy."    37 Cyc. p. 768.

"The power to issue a tax deed is wholly statutory, and if the statute makes no provision therefor, a deed conveys no title." 3 Cooley, Taxation (4th Ed.), § 1462, p. 2898.

"The deed is the last act in the execution of the statutory power, and all conditions precedent must be complied with before it can lawfully be given. * * * If the statute provides that a deed shall be given on production of the tax sale certificate, such production is a condition precedent. And so is a requirement that all taxes constituting a lien on the land be paid." 3 Cooley, Taxation (4th Ed.), § 1466, pp. 2902, 2903.

The record discloses that since the case of *Rott* v. *Steffens, supra,* plaintiff has never been denied her deed, but that she has refused to apply for it, seeking to recover damage instead. The controller's refusal in the first instance to give the deed was not unreasonable. The new charter had changed the law as to the date of its passing, and he felt he should await the determination of what he had the right to believe was a friendly suit to determine whether the old or the new law controlled. The plaintiff is still entitled to her deed, and it should be given her upon application.

The judgment is reversed, and one may be entered in favor of the defendant. Costs of both courts to appellant.

SHARPE, C. J., and BIRD, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.