STATE OF IOWA, appellant, v. HAWKEYE OIL COMPANY, INC., et al., appellees.

No. 50271.

**150**

SEPTEMBER 19, 1961.

REHEARING DENIED NOVEMBER 14, 1961.

Evan Hultman, Attorney General, Frank D. Bianco and Carl H. Pesch, Assistant Attorneys General, all of Des Moines, for appellant.

Joe B. Tye, of Marshalltown, for appellee Hawkeye Oil Company, Inc.

Haupert, Robertson & Johnson, of Marshalltown, for appellee William E. Menees.

Boardman, Cartwright & Druker, of Marshalltown, for appellee Hawkeye-Security Insurance Company.

PETERSON, J.—This is an action in equity by the State of Iowa against William E. Menees, as a licensed fuel oil dealer, Hawkeye Oil Company, Inc., as a fuel oil distributor, and Hawkeye-Security Insurance Company, as bondsman for both parties. The claim is for $82,537.98 for special fuel taxes collected by the parties from Diesel fuel users, but not remitted to the State. It is properly in equity, by reason of accounting features involved.

The trial court entered judgment against William E. Menees for the full amount, plus penalty of 10%, and interest at ½% per month, in accordance with section 324.64, 1958 Code of Iowa. It dismissed plaintiff's petition as against Hawkeye Oil Company, Inc. From this dismissal the State has appealed.

Appellant's assignments of error are: 1. The court should

have held Hawkeye Oil Company was principal, and Menees its agent, in the sale of the Diesel fuel, and that Hawkeye as principal was liable for the tax. 2. When the tax money came into the hands of the distributor, Hawkeye Oil Company, the court should have held that a trust was impressed upon it in favor of the State, making such distributor also liable to the State. 3. The court erred in its findings of fact and conclusions of law, and therefore in dismissing petition as to Hawkeye Oil Company.

On April 1, 1957, Hawkeye Oil Company, Inc., of Marshalltown, entered into a three-year sublease with William E. Menees, d/b/a Mid-State Truck Stop, renting to him an oil station located on Highway No. 30 at its junction with South Twelfth Avenue in Marshalltown. Hawkeye Oil Company was distributor of Shell products.

On the same date, Dealer Sales Agreement, Consignment Agreement and Acknowledgment of Indebtedness were entered into between the same parties.

From April 1 until July 4 the parties continued the same program as had been carried out by the predecessor of Mr. Menees, to the effect that Diesel fuel and gasoline were sold and delivered to Mid-State Truck Stop on the basis of the distributor, Hawkeye Oil Company, making payment of the State and Federal Diesel fuel and gasoline taxes.

Chapter 164 of the Fifty-seventh General Assembly made extensive changes with reference to motor fuel and special fuel tax and the payment of same, amending chapter 324 of the Code.

Under the amendment either a licensed dealer or a licensed distributor could pay the tax. The question of payment of the tax was not covered in any of the written agreements between the parties on April 1, but verbally Mr. Menees and Mr. Fred A. Bogaert, President of Hawkeye Oil Company, agreed that after July 4, 1957, the Diesel fuel and gasoline would be delivered and charged to Mid-State Truck Stop without inclusion of the tax, and that Mr. Menees would pay the tax to the State of Iowa.

The controversy in this case arises by reason of purchase of Diesel fuel by three large volume customers, and failure to

152

pay the tax on their purchases. They were: Consolidated Freightways, Inc., Illinois-California Express, and Scott Truck Lines.

When this controversy first arose in June of 1958, the State of Iowa made a claim against Mr. Menees for $90,951.43. After some negotiation it was determined that the tax owing the State of Iowa, outside of the Diesel fuel tax of the three large volume customers above named, was in the amount of $13,437.15. This amount was paid by Mr. Menees, and all tax questions were taken out of the State's claims with the exception of the Diesel fuel tax owing on the gallonage purchased by the three truck-line customers. It was established that the gallonage sold for the year from July 4, 1957 to July 4, 1958, was 1,179,114 gallons. The State tax of 7¢ per gallon is $82,537.98. Mr. Menees did not pay any of this tax.

On June 16, 1958, the treasurer of State filed a certificate of assessment against Hawkeye Oil Company, Inc. and William E. Menees, d/b/a Mid-State Truck Stop, for $3173.08, unpaid taxes, penalty and interest, in accordance with authority granted by section 324.65, 1958 Iowa Code.

On July 2, 1958, the State treasurer filed further certificate of assessment for unpaid taxes against William Menees, d/b/a Mid-State Truck Stop, for $85,444.06, penalty and interest.

On August 4, 1958, as a superseding certificate, the treasurer of State filed assessment against William E. Menees and Hawkeye Oil Company, Inc., in the amount of $89,107.86, penalty and interest.

The treasurer never called any hearings as to such taxes as permitted by section 324.68. Appellees contend this was a prerequisite to maintenance of this action. We do not accept this contention. The section provides: "Hearings before the treasurer * * * *may be held* * * *." (Emphasis ours.) Furthermore, whether or not hearings were held, this action is authorized under the broad authority of section 324.77 which in part provides: "The special remedies provided under the provisions of this chapter * * * shall not be construed as depriving the state of any other remedy it may have either at law or in equity independent of this chapter."

Appellees base their position as to a hearing being required, on Lineberger v. Bagley, 231 Iowa 937, 2 N.W.2d 305. This decision is not applicable to the case at bar. In the cited case, the State Treasurer held a hearing and made a decision. Lineberger filed petition for writ of certiorari, and on trial offered further extended evidence as to the question involved before the treasurer. Writ was granted. We reversed, holding the decision of the treasurer was conclusive, if a hearing was held and there was some evidence to sustain it.

The procedure by which Menees secured credit for the Diesel fuel sold by him to the three truck lines, and the taxes, was as follows: when a truck was filled with Diesel fuel a charge ticket would be filled out in triplicate. It would show the number of gallons purchased. Mr. Menees and his employees would not fill out the cost because this differed from time to time. The charge for the Diesel fuel was to be on the basis of the Wall Street Journal published market price. The tickets would be delivered to the distributor, Hawkeye Oil Company, and would be filled out by them on the basis of such price. To this would be added the State of Iowa fuel tax of 7¢ per gallon, the Federal tax of 3¢ per gallon, and Mr. Menees' commission of 2¢ per gallon. Mr. Menees would receive credit immediately on the books of Hawkeye Oil Company for such total amount. The charge ticket was then sent to Shell Oil Company, who had furnished the Diesel fuel. In due course, bill would be sent by Shell Oil Company to each of the three trucking companies. Checks would be returned by the companies to Shell Oil Company. Payment was then made by Shell Oil Company to Hawkeye Oil Company. The oil company would in such manner receive payment for the charge tickets for which it had given credit to Mr. Menees.

I. Appellant contends a relationship of principal and agent existed as between Hawkeye (principal) and Menees (agent), thus making Hawkeye primarily liable for the tax.

Several facts and circumstances are recited in support of the existence of such relationship. Much weight is given by appellant to the fact that the sales tickets used by Menees in his business with the three truck lines contained the name of

Hawkeye Oil Company. These facts alone are not sufficient to establish agency.

Facts and circumstances can establish agency, but not in the face of a specific agreement to the contrary, and not in the face of many other indicia of control by, and independence of, Menees, as established by the record. Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823; Hoff v. Shockley, 122 Iowa 720, 98 N.W. 573, 64 L. R. A. 538, 101 Am. St. Rep. 289; Humpton v. Unterkircher & Sons, 97 Iowa 509, 66 N.W. 776; Francis v. Johnson, 127 Iowa 391, 101 N.W. 878; Brown v. McLeish, 71 Iowa 381, 32 N.W. 385.

Paragraph 10 of the lease provides: "10. LESSEE'S BUSINESS. Nothing in this lease shall be construed as reserving to Hawkeye any right to exercise any control over, or to direct in any respect the conduct or management of, the business or operations of Lessee on the premises; but the entire control and direction of such business and operations shall be and remain in Lessee, subject only to Lessee's performance of the obligations of this lease. Neither Lessee nor any person performing any duties or engaged in any work on the premises at the request of Lessee shall be deemed an employee or agent of Hawkeye."

The record also discloses: Menees hired all help; carried workmen's compensation on his 12 employees; withheld income and social security tax for such employees; paid all bills in maintenance of the business; bought and sold other merchandise than that bought from Hawkeye; maintained an advertising program; kept all his own books and records; operated an automobile repair service; held and controlled use of keys to his pumps; made many sales of Diesel fuel and gasoline outside of the sales to the three truck lines; made application for license to State Treasurer as special fuel dealer, and secured such license in his own name; his name appeared in telephone directory and on the station as proprietor; filed his trade name in courthouse; no sign of Hawkeye Oil Company appeared any place on his station.

Reynolds v. Skelly Oil Co., supra, was a case where Skelly Oil Company rented a station to Watson. In a damage case for

alleged negligence at the station, Skelly was joined and the question was whether the landlord was a principal and also liable. The situation was somewhat the same as in the case at bar. The court held Skelly was not liable and said: "In all of the cases decided by this court, particular emphasis has been given to the right of the employer [would be like Menees] to dictate and control the manner, means, and details of performing the services." (Page 170 of 227 Iowa)

We hold the relationship of principal and agent did not exist.

■ II. The Diesel fuel tax money finally came at rest in the bank account of Hawkeye Oil Company, with the exception of some cash payments by Hawkeye from month to month. All through the year the transactions between Hawkeye and Menees were bookkeeping accounts. The books disclosed that Menees through the year became indebted to Hawkeye Oil Company in the sum of $47,328.28. To the extent of said amount Hawkeye Oil Company, through bookkeeping credits, used part of the state Diesel fuel tax money to pay the Menees account.

This amount, both because of statutory provision, and also through the creation of an equitable constructive trust, was the property of the State of Iowa and should not have been used by Hawkeye to pay the Menees open book account.

Both the State of Iowa and Hawkeye retained well-known and prominent firms of certified public accountants to audit the books and from such audits and from the books, which were all in evidence, the amount of money held in trust by Hawkeye Oil Company for the State of Iowa can be computed.

The following schedules and summary based on the audits and the books, disclose the computations by which we arrive at the amount of State of Iowa tax money used by Hawkeye Oil Company to pay the indebtedness of Menees to Hawkeye.

## SCHEDULE A

### JULY 4, 1957 TO JULY 4, 1958

SCHEDULE SHOWING COMPOSITION OF
PROCEEDS FROM SALE OF SPECIAL FUEL BY
MID-STATE TRUCK STOP TO CONSOLIDATED FREIGHT-
WAYS, ILLINOIS-CALIFORNIA EXPRESS AND SCOTT TRUCK LINES, AND
COLLECTED THROUGH SHELL OIL COMPANY BY HAWKEYE OIL COMPANY, INC.

Cost to Mid-State Truck Stop of 1,179,114 gallons of Special
Fuel sold to the above three trucking firms ..................................$148,954.82
Portion of billing representing charges for oil, services, etc. ........  3,989.98
Commission to Mid-State Truck Stop at 2¢ per
gallon ..............................................................................$23,582.28
Less—Portion applied as price rebates ..................... 10,209.43      13,372.85

Federal Diesel Fuel Tax—3¢ per gallon on
1,179,114 gallons ................................................................................  35,373.42
State of Iowa Special Fuel Tax—7¢ per gallon on
1,179,114 gallons ................................................................................  82,537.98

Total of sales tickets received from Mid-State Truck Stop and
forwarded to Shell Oil Company for collection (including
Special Fuel Tax on Diesel Fuel) ...............................................$284,229.05

## SCHEDULE B

### JULY 4, 1957 TO JULY 4, 1958

SCHEDULE SHOWING DISPOSITION OF
PROCEEDS FROM SPECIAL FUEL TAX INCLUDED
IN COLLECTIONS THROUGH SHELL OIL COMPANY FROM CONSOLI-
DATED FREIGHTWAYS, ILLINOIS-CALIFORNIA EXPRESS AND SCOTT TRUCK LINES

Total sales tickets received from Mid-State Truck Stop and
forwarded to Shell Oil Company for collection (including
Special Fuel Tax on Diesel fuel) ....................................................$284,229.05
Less—Credited to Special Fuel Account ..........$167,533.88 (b)
Deduct—Amount applied on account for
Special Fuel sold to others or remain-
ing in inventory of Mid-State Truck
Stop ............................................................. 18,579.06

Cost of Special Fuel sold to the three
trucking firms .............................................$148,954.82 (c)
Charges for oil, services, etc. included in bill-
ings .......................................................................  3,989.98

Commission to Mid-State Truck Stop includ-
ed in billings ........................................................ 13,372.85          166,317.65

Balance—Representing Federal and State of
Iowa Fuel Taxes ...............................................................................$117,911.40
Less—Credited to Mid-State Truck Stop on
gasoline and miscellaneous merchandise
account ............................................................. 92,093.86
Credited to Mid-State Truck Stop on ac-
count for Diesel fuel sold to others or
remaining in inventory of Mid-State Truck
Stop ................................................................... 18,579.06
(Difference between (b) and (c) above)

Credited to Mid-State Truck Stop for lease
rentals on service station and sign ............. 1,200.00
Credited to Mid-State Truck Stop for
maturing installments on note receiv-
able ................................................................... 200.00

$112,072.92
Deduct—Portion realized from
Shell Oil Company credit
cards principally for gaso-
line .............................................$17,903.19
Portion realized from mis-
cellaneous credits ................. 222.05
Portion representing charges
for oil, services, etc. which
belonged to Mid-State Truck
Stop ........................................... 3,989.98
Portion representing com-
missions belonging to Mid-
State Truck Stop ................ 23,582.28    45,697.50

Total tax amount applied to amounts owing by Mid-State
Truck Stop ................................................................................. 66,375.42

Balance ...............................................................................................$ 51,535.98
Paid to Mid-State Truck Stop by checks ...................................... 50,300.00

Balance of credit not disposed of as of
July 4, 1958 ...............................................................................$ 1,235.98

### Summary

Total fuel tax funds applied to amounts owing by Mid-State
Truck Stop ...............................................................................$ 66,375.42

Add balance not disposed of as of July 4, 1958 ........................... 1,235.98

             Total ................................................................$ 67,611.40
(This is 57.34% of the total unpaid tax of $117,911.40)
Deduct 57.34% of the Federal fuel tax of $35,373.42 .................. 20,283.12

State of Iowa Diesel fuel tax used by Hawkeye
    Oil Company to settle Mid-State Truck Stop
    (Menees) book account ...............................................................$ 47,328.28

The statutory provision impressing the trust relationship on the money in the hands of Hawkeye Oil Company, section 324.72, as far as pertinent is: "* * * Every person collecting fuel tax money as part of the selling price of motor fuel or special fuel, shall hold the tax money in trust for the state of Iowa unless the fuel tax on the fuel has been previously paid to the state of Iowa * * *."

This statutory provision with reference to the establishment of a trust in favor of the State is comparatively new and has not been before this court in any previous decision. We hold it establishes Hawkeye Oil Company as a trustee for the tax money which it used to pay the book account of Menees, and that said money so held in trust by Hawkeye is payable to the State of Iowa.

The following principle also pertains in the case at bar in connection with the existence of a constructive trust in favor of the State against Hawkeye Oil Company, as stated in 90 C. J. S., Trusts, section 435:

"As a general rule, if the property may be distinctly traced and identified, and superior rights of innocent third persons have not intervened, a cestui que trust may, in equity, follow and recover, or impress a trust on, trust funds or property which have been diverted, no matter what the form into which they have been converted or into whose hands they have come."

This theory appears in 89 C. J. S., Trusts, sections 146B and 153.

It is similarly stated in 54 Am. Jur., Trusts, sections 219, 220 and 248.

The principle has been stated, and is supported, in many decisions in Iowa. Whitaker v. Tiedemann, 200 Iowa 901, 905, 205 N.W. 468; Eliason v. Stephens, 216 Iowa 601, 608, 246 N.W. 771; Stegemann v. Bendixen, 219 Iowa 1190, 260 N.W. 14; Rance v. Gaddis, 226 Iowa 531, 542, 284 N.W. 468; Homolka v. Drahos, 247 Iowa 525, 529, 74 N.W.2d 589; Davenport Plow Co. v. Lamp, 80 Iowa 722, 45 N.W. 1049, 20 Am. St. Rep. 442; Cable v. Iowa State Savings Bank, 197 Iowa 393, 194 N.W. 957, 197 N.W. 434, 31 A. L. R. 748; Andrew v. State Bank, 205 Iowa 1064, 1068–1070, 217 N.W. 250, 252.

█ The constructive trust theory was carefully analyzed in Andrew v. State Bank, supra, in which case the following principles were stated:

" 'The true owner of a trust fund traced to the possession of another has the right to have it restored, not as a [his] debt due and owing, but because it is his property, wrongfully withheld from him * * *.'

"It is not incumbent on plaintiff to identify the particular funds; for, as money has no earmarks, this would be practically impossible. * * *

"Such process of 'tracing' may be by the introduction of evidence that will tend to identify the property from the time it leaves the trustor, or like person, until it appears through the trustee into the hands of the receiver, or other similar officer; or the same result may be accomplished by the aid and assistance of presumption, when the facts and circumstances so warrant."

See also Stilson v. First State Bank of Corwith, 152 Iowa 724, 133 N.W. 354; Leach v. Farmers' Savings Bank, 205 Iowa 114, 213 N.W. 414, 217 N.W. 437, 56 A. L. R. 801; Cable v. Iowa State Savings Bank, supra; Leach v. Sanborn State Bank, 203 Iowa 401, 212 N.W. 694, 51 A. L. R. 900; Andrew v. Eddyville Savings Bank, 204 Iowa 431, 215 N.W. 623; Murray v. North Liberty Savings Bank, 196 Iowa 729, 195 N.W. 354.

In the case at bar there is no question about tracing the money. The bill for the Diesel oil, together with the tax, was sent to Shell Oil Company by Hawkeye Oil Company and the money came back to Hawkeye. It was deposited in their bank

account. As far as the actual money was concerned this was the stopping place. Of course, in the bookkeeping situation as between Hawkeye and Menees, a bookkeeping credit slip was sent to Menees from time to time. The point of the trust situation is that this tax money was used to pay the Menees book account from month to month.

The trust funds in the form of Diesel fuel tax became commingled in the bank account of Hawkeye Oil Company with other funds. They were possibly converted into other forms of property held by Hawkeye. 90 C. J. S., Trusts, section 438, states:

■ "As a general rule the cestui que trust's equitable right of recovery is not destroyed by reason of the fact that the trustee has so commingled the trust property with his own property that it is impossible particularly to identify the trust property; for, unless the trust property is such that it can be ascertained and separated from the rest, the entire commingled fund or property will be treated as subject to the trust, to the extent necessary to make good the claim of the cestui que trust to funds traced to, and still found commingled in, the common fund, except insofar as the trustee may be able to distinguish and separate that which is his own."

Since the instant case involves the misapplication of funds in Hawkeye Oil Company hands the following statement appearing in 54 Am. Jur., Trusts, section 230, is applicable:

■ "The rule is frequently stated that where money or property is entrusted to another for a certain purpose, such as the payment of a debt, equity implies or imposes a trust that the money or property will be applied to such purpose. It would seem that such a trust can be viewed either as an express one, created by the manifestation, by conduct, of an intention to create a trust, or as a constructive trust that will be enforced as against any breach of confidence; at least, a breach of the confidence to apply the property to the proper purpose gives rise to a constructive trust enforceable against the money or property in question."

III. In addition to liability of Hawkeye Oil Company under the trust theory, the claim of the State is supported by

a statutory lien establishing Diesel fuel tax money as prior to the book account of Hawkeye against Menees.

Section 324.65 provides: "* * * Fuel tax liens shall have priority over any lien or *encumbrance* whatsoever except the lien of other state taxes having priority by law, and except that a fuel tax lien shall not have priority over any bona fide mortgagee, pledgee, attaching creditor or purchaser whose right shall have attached prior to the time the treasurer shall have filed his certificate in the office of the clerk of the court." (Emphasis ours.)

Hawkeye Oil Company is substituted as a creditor of Menees, to the extent of the amount of the judgment herein, in place of the State. In other words, instead of Menees owing the State of Iowa this amount, he owes it to Hawkeye Oil Company. The judgment entered by the trial court against Menees is still effective as to the balance of $35,209.70.

The Legislature was diligent in protecting its tax money by the enactment of section 324.65. The loss to the State arises by reason of negligence in administration.

The lien rights of the State are not prejudiced by negligence in the State treasurer's office. 63 C. J. S., Municipal Corporations, page 87, section 779; Lovett v. City Treasurer of Detroit, 286 Mich. 159, 281 N.W. 576; Stiglitz v. City of Detroit, 239 Mich. 26, 214 N.W. 150; Auger v. City of New Bedford, 265 Mass. 327, 163 N.E. 873; Schmid v. Sloate, 19 N. J. Misc. 481, 21 A.2d 319; Black v. Baker, 130 Tex. 454, 111 S.W.2d 706; Plunkett's School v. City of Thomasville, 178 Ga. 625, 173 S.E. 656.

63 C. J. S., supra, states: "* * * a municipality is not liable for the wrongful or *negligent* acts of a tax officer in the performance of his duties." (Emphasis ours.)

The case is reversed with instructions to enter judgment against Hawkeye Oil Company in the amount of $47,328.28.

In accordance with the provisions of section 324.64, the penalty of 10% and the interest at ½% per month shall be added to the judgment.—Reversed.

All JUSTICES concur.