David E. BRUCE, Trustee of the Keith E. Bruce Revocable Trust; David E. Bruce, Trustee of the Mary Kay Bruce Revocable Trust; David E. Bruce, Husband and Wife, Plaintiffs,

v.

ICI AMERICAS, INC., n/k/a Zeneca Inc., A Delaware Corporation, Defendant.

Civil No. 1–94–CV–10042.

United States District Court,
S.D. Iowa,
Western Division.

May 15, 1996.

John Billings Boeye, Stamets Law Office, Red Oak, Iowa, for Plaintiffs.

K.J. Walker, Des Moines, Iowa, John P. Mandler, Faegre & Benson Professional, Limited Liability Partnership, Minneapolis, MN, for Zeneca, Inc.

## ORDER

LONGSTAFF, District Judge.

The Court has before it Defendant ICI Americas Inc., n/k/a Zeneca Inc.'s ("Zeneca") Motion for Summary Judgment filed December 18, 1995, regarding the allegations contained in Plaintiffs' Petition.[1] Plaintiffs resisted this motion on April 2, 1996 and Defendant filed a reply brief on April 11, 1996.

## I. BACKGROUND

Unless otherwise indicated, the following facts are either not in dispute or are viewed in the light most favorable to the plaintiffs. Plaintiffs are in the business of farming. Their farming operation is a large agricultural business[2] formerly operated by Keith Bruce and his son David Bruce and currently operated by David and Peggy Bruce. During the years 1990, 1991, and 1992, Plaintiffs' farming operation generated gross income of $2.1 million, $1.4 million, and $1.3 million respectively.

In connection with their farming operation, between 1982 and 1992, Plaintiffs purchased and used 32 different agricultural chemical products from 14 different manufacturers, including at least 29 separate purchases of five different Zeneca products. In addition, Plaintiffs have purchased Zeneca products in every year since 1983. These purchases have included Dyfonate, the product at issue in this case, in 1985, 1986, 1987, and 1990. The labels for each of these products included a disclaimer of warranty and limitation of liability. Moreover, all of the Zeneca and Stauffer[3] products purchased and used by Plaintiffs during this time period contained a label with a similar disclaimer of warranty and limitation of liability as the one on the Dyfonate label at issue.

Plaintiff David Bruce has had a commercial pesticide application license since 1976 and has personally applied agricultural chemicals in every year since 1976. In order to maintain his license, David Bruce must take a class and pass a certification test every three years.

David Bruce stated that he believed it is important to read agricultural chemical labels prior to applying the product. He also understood that it is a violation of federal law to apply a product in a manner inconsistent with the product's label. It is his practice to read every agricultural product label before applying the product.[4] David Bruce was also aware that agricultural chemical dealers had copies of labels of the products they sold and that he could review such labels prior to purchasing agricultural chemicals.

---

1. The Amended and Substituted Petition states the following causes of action: Breach of Implied Warranty of Fitness for a Particular Purpose (Division I), Breach of Warranty of Merchantability (Division II), Breach of Express Warranty (Division III), Strict Liability (Division IV).

2. Plaintiffs farm approximately 2,500 acres a year. (Bruce depo. 6:15–20). In addition, during the period 1990–92, Plaintiffs raised 4,500 cattle every year. Plaintiffs also employ 2 full-time employees, use a commercial accountant, and own an extensive amount of farming equipment.

3. In 1987, Zeneca, at that time known as ICI Americas, Inc., purchased Stauffer Chemical Co.

4. David Bruce read the Dyfonate label before applying it in 1985, 1986, 1987, 1990, and 1992.

In 1992, Plaintiffs purchased Dyfonate II 20–G ("Dyfonate"), a Zeneca product, from two companies: J & N Fertilizer Company, Inc., Malvern Iowa and Benes Service Co., Valparaiso, Nebraska. Zeneca offers various rebates, promotional gifts, contests and calibration of equipment through dealers such as J & N and Benes.

The Dyfonate product which Plaintiffs purchased in 1992 contained a label on the bottom portion of the fifty pound bag that sets forth the following disclaimer of warranties and limitation of liabilities:

IMPORTANT: Read the entire Directions for Use and Warranty before using this product.

CONDITIONS OF SALE AND LIMITED WARRANTY:

The Directions for Use of this product are believed to be reliable and should be followed carefully. However, it is impossible to eliminate all risks associated with the use of this product. Crop injury, ineffectiveness or other unintended consequences may result because of such factors as timing and method of application, weather and crop conditions, mixture with other chemicals not specifically recommended or other influencing factors in the use of this product, all of which are beyond the control of the seller. All such risks shall be assumed by Buyer and User, and Buyer and User agree to hold Seller harmless for any claims relating to such factors.

Seller warrants that this product conforms to the chemical description on the label and is reasonably fit for the purpose stated on the label, subject to the inherent risks referred to above, when used in accordance with directions under normal conditions of use. This warranty does not extend to the use of this product contrary to label instructions, or under abnormal conditions, or under conditions not reasonably foreseeable to or beyond the control of Seller and Buyer and User assume the risk of any such use. SELLER DISCLAIMS ALL OTHER WARRANTIES EXPRESSED OR IMPLIED INCLUDING ANY WARRANTY OF FITNESS OR MERCHANTABILITY.

When Buyer and User claims losses or damages resulting from the use or handling of this product (including claims based on contract, negligence, strict liability or other legal theories), Buyer or User must promptly notify in writing Seller of any claims to be eligible to receive either of the remedies set forth below. The EXCLUSIVE REMEDY OF BUYER OR USER and the LIMIT OF LIABILITY of seller will be, at the election of the Seller, refund of the purchase price for product bought, or replacement of amount of product used. SELLER SHALL NOT BE LIABLE FOR CONSEQUENTIAL, SPECIAL OR INDIRECT DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT AND SELLER'S SOLE LIABILITY AND BUYER'S AND USER'S EXCLUSIVE REMEDY SHALL BE LIMITED TO THE REFUND OF THE PURCHASE PRICE.

While Plaintiffs admit that they read the printed material that accompanied the pesticide which provided instructions for use and generally reviewed the bag for storage and disposal information, they deny that they actually read the disclaimer of warranties contained on the bag. (Bruce depo. 31:2–8; D. Ex. J).

Plaintiffs applied the Dyfonate to 1,253.5 acres of their 1992 corn crop in order to control rootworm. However, the Dyfonate failed to properly control corn rootworms in Plaintiffs' 1992 corn crop resulting in substantial damage to Plaintiffs' crops and lower yields.

## II. SUMMARY JUDGMENT STANDARD

■■■ Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. "As to materiality, the substantive law will identify which facts are material. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## III. ANALYSIS

In support of its Motion for Summary Judgment, Zeneca argues that summary judgment is appropriate for several reasons. First, Zeneca asserts that all of the Plaintiffs' claims are based on allegedly inadequate pesticide labeling and as such are expressly preempted by the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* Second, Zeneca argues that Plaintiffs fail to state a claim under Iowa law because Plaintiffs may not recover economic losses pursuant to tort theories. In addition, Zeneca argues that Plaintiffs may not recover consequential economic loss against a non-privity seller pursuant to breach of warranty theories. Finally, Zeneca asserts that pursuant to Iowa Code §§ 554.2316 and 554.2719, it disclaimed all implied warranties and limited recovery upon a showing of breach of express warranty to the price of the product.

### A. Preemption by FIFRA

"FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging." *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 71 (8th Cir.1995); *see Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 601, 111 S.Ct. 2476, 2479–80, 115 L.Ed.2d 532 (1991). Section 24 of FIFRA provides in part:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a), (b).

■ State actions based on the adequacy of warnings or instructions on the labels of EPA-registered pesticides are preempted. *E.g., Welchert,* 59 F.3d at 73; *see Cipollone v. Liggett Group,* 505 U.S. 504, 525, 112 S.Ct. 2608, 2622, 120 L.Ed.2d 407 (1992). "Labeling" is defined as "all labels and all other written, printed, or graphic matter (A) accompanying the pesticide or device at any time; or (B) to which reference is made on the label or in the literature accompanying the pesticide or device." 7 U.S.C. § 136(p)(2).

Zeneca asserts that all of the Plaintiffs' claims are label-based, and, as such, are preempted by FIFRA. Plaintiffs, on the other hand, contend that their claims are not based upon information or instructions contained in the label. Rather, Plaintiffs assert that their claims are based upon the fact that the Dyfonate was ineffective regardless of what wordage was contained in or on the label.

### 1. Breach of Implied Warranty of Fitness for a Particular Purpose

■ Division I of Plaintiffs' Petition states a claim for Breach of Implied Warranty of Fitness for a Particular Purpose. Paragraph 7 of Division one states:

That on the label of each bag of [Dyfonate] Defendant impliedly warranted to the ultimate consumer that the insecticide was for the control of corn rootworm, conformed to the chemical description on the label and was 'reasonably fit for the particular purpose of the control of corn rootworm for use as directed thereon.'

If the Plaintiffs' claim for Breach of Implied Warranty of Fitness for a Particular Purpose was based on this paragraph alone, it would be preempted by FIFRA. *See Welchert,* 59 F.3d at 72–73. However, in other portions of

Plaintiffs' Petition, they indicate that the claim is also dependent upon representatives of Zeneca's statements and representations, advertising, sales literature, and Zeneca's trade name. (Petition ¶¶ 8, 9). As a result, while Plaintiffs may not rely on label-based allegations, as is contained in paragraph 7, the other allegations supporting their claim are not preempted by FIFRA.

## 2. Breach of Warranty of Merchantability

Division II of Plaintiffs' Petition states a claim for Breach of Warranty of Merchantability. Similar to Plaintiffs' claim in Division I of their Petition, Plaintiffs' claim of breach of warranty of merchantability is premised upon label-based allegations (Petition, Division II ¶ 2) and allegations regarding representations made through advertising, sales literature, and Zeneca's trade name. (Petition, Division II ¶¶ 3, 4). As a result, while Plaintiffs' label-based allegations, contained in paragraph 2, are preempted by FIFRA, the other allegations supporting their claim are not preempted by FIFRA.

## 3. Breach of Express Warranty

■■■ Unlike an implied warranty, an express warranty based on the labeling of a product, which is *"voluntarily undertaken* should not be regarded as a 'requirement ... imposed under State law.'" *Cipollone v. Liggett Group,* 505 U.S. 504, 526, 112 S.Ct. 2608, 2622, 120 L.Ed.2d 407 (1992)[5] (emphasis added). Rather, the contractual nature of such a warranty dictates that such claims are not preempted by FIFRA. *Id.*

Under FIFRA, before a pesticide can be registered with the EPA, the Administrator must determine whether:

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of the Act; ....

7 U.S.C. § 136a(c)(5)(A)–(B).[6] Furthermore, the EPA requires that a pesticide manufacture include on the pesticide labeling directions for use, the use classification, the sites of application, the target pests, and the dosage rate for each site and pest. 40 C.F.R. § 156.10(i)(2)(x)(B), (h)(2), (i)(1), (i)(2)(i). In registering Dyfonate and approving its product labeling, the EPA also concluded that Dyfonate, its testing and the labeling accompanying it were reasonable and appropriate when the product was used in accordance with "widespread and commonly recognized practice." *Id.*

Plaintiffs' assert in their claim for Breach of Express Warranty that "on the label of each bag of [Dyfonate] [Zeneca] expressly warranted to the ultimate consumer that the insecticide was for the control of corn rootworm, conformed to the chemical description of the label and was 'reasonably fit for use as directed thereon.'" (Petition, Division III ¶ 2).

FIFRA and its regulations require Zeneca to provide the labeling information which forms the basis for the portion of Plaintiffs' claim for breach of express warranty which is based on Zeneca's label. Thus, Zeneca's label statement regarding Dyfonate's use and its chemical description is a mandated disclosure under FIFRA, not a "voluntarily undertaken" promise. *Welchert,* 59 F.3d at 72 (citing *Higgins v. Monsanto Co.,* 862 F.Supp. 751, 761 (N.D.N.Y.1994)); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 749 (4th Cir.1993). As a result, to the extent Plaintiffs' claim for Breach of Express Warranty

---

**5.** In *Cipollone* the Supreme Court analyzed the preemption provision in the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340, which is substantially similar to the preemption provision in FIFRA. *Welchert,* 59 F.3d at 71. The preemption provision in the 1969 Cigarette Act provides:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b).

**6.** The corresponding federal regulation provides in part that the EPA will approve an application under the criteria of FIFRA § 3(c)(5) only if:

The Agency has determined that the product is not misbranded as that term is defined in FIFRA sec. 2(q) and part 156 of this chapter, and its labeling and packaging comply with the applicable requirements of the Act, this part, and parts 156 and 157 of this chapter.

40 C.F.R. § 152.112(f).

is based on the labels of the Dyfonate, the claim is preempted.

However, to the extent that the claim is based on allegations regarding warranties made through advertisements, sales literature, and Zeneca's trade name (Petition, Division III, ¶¶ 3, 4) the claim is not preempted by FIFRA.

#### 4. Strict Liability

■ Plaintiffs' claim of strict liability is not label-based and is therefore not preempted by FIFRA.

### B. Recovery for Economic Loss Pursuant to Iowa Tort Law

■ In Division IV of their Petition, Plaintiffs allege a cause of action sounding in tort—strict liability. Under Iowa law, "purely economic injuries without accompanying physical injury to the user or consumer or to the user or consumer's property are not recoverable under strict liability." *Nelson v. Todd's Ltd.,* 426 N.W.2d 120, 123 (Iowa 1988).

■ As part of their strict liability claim, Plaintiffs allege that the Dyfonate that they purchased did not effectively control corn rootworms. Plaintiffs further allege that the proximate result of this ineffectiveness was that they have sustained the following damages: (1) the purchase price of the Dyfonate used and (2) loss of income resulting from yield loss due to the ineffectiveness of the Dyfonate. (Petition, Division IV ¶ 6).

■ While contract law protects a purchaser's expectation interest that the product received will be fit for its intended use, the essence of products liability law is that the plaintiff has been exposed, through a dangerous product, to a risk of injury to his person or property. *Tomka v. Hoechst Celanese Corp.,* 528 N.W.2d 103, 107 (Iowa 1995). "Defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Id.*

In *Nelson v. Todd's Ltd.,* 426 N.W.2d 120 (Iowa 1988), the plaintiff brought a products liability claim against a meat curing product manufacturer because the meat curing product failed to work, resulting in spoiling of quantities of meat. *Id.* at 120. The Supreme Court of Iowa found that the "harm occurred not because [the allegedly defective product] damaged the meat in some active way, but because it failed to work at all." *Id.* at 123. As a result, the loss related to the user's "disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in contract." *Id.* at 125.

Similar to *Nelson,* in the present case, "the damage was the foreseeable result from an alleged failure of the product to work properly because of a defect or omission from the product." *Id.* The Court finds that Plaintiffs' claim that the defective Dyfonate caused significant yield reductions constitutes a loss that is cognizable by the law of contracts or commercial transactions rather than tort law. *See Id.* at 124–25; *Tomka,* 528 N.W.2d at 106–07 (damage caused by a product designed to promote growth in cattle which failed to so, gave rise to an contract-warranty cause of action rather than a tort action); *Earl Brace & Sons v. Ciba–Geigy Corp.,* 708 F.Supp. 708, 711 (W.D.Pa.1989) (holding that a reduction in plaintiff's potato yield allegedly caused by herbicide ineffectiveness was the result of the failure of the herbicide to meet the economic expectations of the plaintiff and therefore not recoverable in tort); *Monsanto Agricultural Products Co. v. Edenfield,* 426 So.2d 574, 576 (Fla.App. 1982) (holding that the purchaser of an allegedly ineffective herbicide could not recover in tort). As a result, Plaintiffs are precluded from recovering their economic injuries through a strict liability claim.

### C. Consequential Economic Loss Against a Non–Privity Seller

■ Under Iowa law, non-privity buyers cannot recover consequential economic loss damages under a theory of express or implied warranty. *Tomka,* 528 N.W.2d at 107–08 (citing *Beyond the Garden Gate, Inc. v. Northstar Freeze–Dry Mfg., Inc.,* 526 N.W.2d 305, 309–10 (Iowa 1995)).

Whether a party is "in privity" with another party depends on whether they are parties to a contract. If the parties have contracted with each other, they are in

privity. . . . If they have not, they are not in privity. . . . [A]n example of a non-privity plaintiff [is] one who purchases a product but does not buy it directly from the defendant.

*Id.* at 107. In the present case, part of the damages that Zeneca seeks to recover are consequential economic loss damages.[7] As a result, the Court must determine whether the Plaintiffs and Zeneca were in privity in order to determine whether Plaintiffs can recover the consequential economic loss damages under their warranty claims.

■ In 1992, Plaintiffs purchased the Dyfonate in question from two companies: J & N Fertilizer Company, Inc., Malvern Iowa ("J & N") and Benes Service Co., Valparaiso, Nebraska ("Benes"). Zeneca argues that it is not "in privity" with Plaintiffs because Plaintiffs purchased the Dyfonate from separate business entities rather than directly from Zeneca. Plaintiffs, on the other hand, argue that a principal-agency relationship existed between Zeneca and the dealers which sold its products. As a result of this principal-agent relationship, Plaintiffs assert that they were "in privity" with Zeneca when they purchased its products.

■ An agency relationship can be established by expressed, implied, or apparent authority. *Smith v. Air Feeds, Inc.,* 519 N.W.2d 827, 831 (Iowa App.1994); *see Clemens Graf Droste Zu Vischering v. Kading,* 368 N.W.2d 702, 711 (Iowa 1985). The agency relationship may be proven by the words and conduct of the parties, together with all the circumstances of the particular case. *Menzel v. Morse,* 362 N.W.2d 465, 475 (Iowa 1985). The existence of an agency relationship is ordinarily a fact question, but there must be substantial evidence to generate a jury question. *Chariton Feed and Grain, Inc. v. Harder,* 369 N.W.2d 777, 779 (Iowa 1985); *Anderson v. Boeke,* 491 N.W.2d 182, 187 (Iowa App.1992). However, direct evidence is not required. *Menzel,* 362 N.W.2d at 475. The burden of proving the principal agent relationship is upon the party asserting such a relationship. *Brockway v. Employment Appeal Bd.,* 469 N.W.2d 256, 257 (Iowa App.1991).

■ The principal's right to control the agent is the primary consideration in determining the existence of an agency relationship. *Mermigis v. Servicemaster Industries, Inc.,* 437 N.W.2d 242, 246 (Iowa 1989). Although they are distributors for Zeneca's products, J & N and Benes are incorporated separately from Zeneca. Plaintiffs point to Zeneca's offer of various rebates, promotional gifts, contests and calibration of equipment through dealers such as J & N and Benes as evidence of a principal-agent relationship.[8]

While J & N and Benes may have been authorized distributors of Zeneca's products, the activities mentioned by Plaintiffs are insufficient to demonstrate that Zeneca controlled the operations of J & N and Benes related to Dyfonate. *See Connick v. Suzuki Motor Co., Ltd.,* 275 Ill.App.3d 705, 717–18, 212 Ill.Dec. 17, 27, 656 N.E.2d 170, 180 (1995) (fact that sale is made by authorized

---

**7.** In their Petition Plaintiffs state:

The failure of [Dyfonate] to effectively control corn rootworm decrease[s] the yield of Plaintiffs' 1,253.50 acre corn crop by approximately 55.69 bushels per acre; whereby Plaintiffs have suffered a loss of income from Plaintiffs' crop in the amount of $139,555.41.

(Petition, Division I ¶ 15; Division II ¶ 9); Division III ¶ 9). These damages constitute consequential economic loss damages. *Beyond the Garden Gate, Inc.,* 526 N.W.2d at 309 (consequential economic loss damages include "loss of profits resulting from the failure of the goods to function as warranted. . . .").

**8.** Specifically, Plaintiffs assert that the several parts of the record create a question of material fact regarding the existence of an agency relationship. In 1988/1989, Zeneca offered customers a Black & Decker dustbuster if they would

purchase 500 pounds of Dyfonate. Zeneca participated with its dealers in giving away a Ford pickup and other prizes in the same year. In 1991, advertisements informed customers that they could contact either the dealer or the corporation for additional information on its products. In 1988, Zeneca offered mail-in refunds equal to $2.50 per bag of Dyfonate purchased. In 1989, Zeneca instituted a "Tools for Success" promotion in conjunction with its dealers, which included free valuable merchandise to be given away to customers. In 1990, Zeneca offered its customers free calibration of customer's planters to ensure proper application of Dyfonate. Finally, Zeneca has incorporated dealers' names in its radio ads to promote the sale and use of its product.

dealer of manufacturer does not give rise to apparent authority or agency relationship on part of the dealer sufficient to establish privity between the manufacturer and the purchaser thus allowing recovery by the purchaser against the manufacturer based on a breach of express warranty claim). As a result, the Court concludes that the record fails to create a question of material fact regarding the existence of an principal-agency relationship between Zeneca and Plaintiffs. *See State v. Hawkeye Oil Company,* 253 Iowa 148, 110 N.W.2d 641, 644 (1961) (relationship of principal and agent did not exist between a fuel dealer and a distributor through whom the dealer made purchases because the dealer maintained and operated his station independently of distributor); *Malone v. Nissan Motor Corp.,* 190 Wis.2d 436, 526 N.W.2d 841, 842 (1994) (evidence did not establish that the dealer acted as the manufacturer's agent because the testimony indicated that the manufacturer did not supervise or control the dealer's daily activities); *Malmberg v. American Honda Motor Co. Inc.,* 644 So.2d 888, 890 (Ala.1994) (existence of agency relationship between manufacturer and dealer was not established where the dealer was required to maintain a place of business with sales, service, and parts departments, to develop public interest in manufacturer's products, and to expressly provide to customers that the manufacturer's warranty went with vehicle because the manufacturer did not provide day-to-day supervision, did not determine how the dealer was to comply with the agreement, and left the dealer in charge of determining how to conduct its business); *Schweich v. Ziegler, Inc.,* 463 N.W.2d 722, 730 (Minn.1990) (agency relationship did not exist between a manufacturer of tractors and the tractor's distributor and seller where manufacturer had no right to control the manner of performance of the distributor and did not otherwise hold out the distributor or the seller as its agents, although the distributor used the manufacturer's name for promotional purposes and used the manufacturer's forms to record modifications and repairs); *Hunter Min. Laboratories, Inc. v. Management Assistance, Inc.,* 104 Nev. 568, 763 P.2d 350, 351 (1988) (computer dealers were not the agents of the computer manufacturer as was required to hold the manufacturer liable for the dealer's breach of contracts with the computer buyer because the manufacturer did not control the day to day operative details of the dealer's businesses).

Therefore, as non-privity buyers, Plaintiffs cannot recover consequential economic loss damages under their warranty claims.

### D. Disclaimer

Zeneca claims that it effectively disclaimed all implied warranties and limited recovery on any alleged breach of express warranty to direct damages—the cost of the Dyfonate. Plaintiffs counter that Zeneca's disclaimer of warranties was not conspicuous and that, as a result, under Iowa law, the disclaimer was ineffective.

Implied or express warranties may be modified or excluded pursuant to Iowa Code § 554.2316.[9] Furthermore, "the parties to a contract can agree to exclude consequential damages from one party's possible recovery upon a breach of that contract" pursuant to Iowa Code § 554.2719.[10] *Boone Valley Coop. Proc. Ass'n v. French Mill Mach. Co.,* 383 F.Supp. 606, 612 (N.D.Iowa 1974).

### 1. Exclusion or Modification of Warranties

Iowa Code § 554.2316(2) permits a seller to exclude an implied warranty of merchantability if the disclaimer: (1) mentions

---

**9.** Section 554.2316(2) of the Iowa Code provides: Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by writing and conspicuous . . . . . Iowa Code § 554.2316(2).

**10.** Iowa Code § 554.2719(3) provides:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima-facie unconscionable but limitation of damages where the loss is commercial is not. Iowa Code § 554.2719(3).

merchantability and (2) is conspicuous. Iowa Code § 554.2316(2). A seller may exclude an implied warranty of fitness if the disclaimer: (1) is in writing and (2) is conspicuous. Iowa Code § 554.2316(2). Zeneca's disclaimer in the present case is in writing and it mentions merchantability. Therefore, the Court must determine whether the disclaimer is conspicuous in order to determine whether Plaintiffs' claims of implied warranty of merchantability and implied warranty of fitness are excluded by Zeneca's disclaimer.[11]

The Iowa Code provides guidance in determining whether a term is conspicuous.

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: "Non-negotiable Bill of Lading") is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color....

Iowa Code § 554.1201(10). Zeneca's disclaimer is contained on a label on the bottom portion of the fifty pound bag of Dyfonate. The label is entitled in bold, capital letters "CONDITIONS OF SALE AND LIMITED WARRANTY." It then states, "IMPORTANT: Read the Directions for Use and Conditions of Sale and Warranty before using this product." The portion of the disclaimer which attempts to exclude claims for implied warranties of merchantability and fitness are in bold, capital letters.

Because the printed heading and language of the exclusion is in bold, capital letters, the Court finds that a reasonable person should have noticed it. See Adams v. American Cyanamid Co., 1 Neb.App. 337, 498 N.W.2d 577, 585 (1992) (label on herbicide disclaiming warranties was conspicuous even though disclaimer label appeared in owner's manual where disclaimer heading was displayed prominently and disclaimer was sufficiently set off from other materials); Duyck v. Northwest Chemical Corp., 94 Or.App. 111, 764 P.2d 943, 945 (1988) (notice of warranty that appeared in capital letters on face of a one page contract for sale, with critical portions in boldface, was conspicuous). Therefore, the Court determines that the disclaimer is conspicuous.

Plaintiff David Bruce admits that he read the printed material that accompanied the pesticide which provided instructions for use and generally reviewed the bag for storage and disposal information but he denies that he actually read the disclaimer of warranties contained on the bag. However, even if Plaintiffs did not actually read the disclaimer, they are still bound by its terms. "If a disclaimer is conspicuous, it is effective so long as the buyer receives the disclaimer and has a reasonable opportunity to read it." Adams v. American Cyanamid Co., 1 Neb. App. 337, 498 N.W.2d 577, 587 (1992); see Earl Brace & Sons v. Ciba–Geigy Corp., 708 F.Supp. 708, 710 (W.D.Pa.1989) (farmer who was presented disclaimer on box of herbicide but did not read it was bound by it); Childers & Venters, Inc. v. Sowards, 460 S.W.2d 343 (Ky.1970) (buyer of truck was bound by disclaimer where he was presented disclaimer on the contract but he did not read it before signing it).[12] In addition, Plaintiff David Bruce's previous extensive use of agricultural chemical products, including several other Zeneca products, which contained similar disclaimers to the one in question, demonstrates that he knew or should have known of the disclaimer.[13] See Iowa Code § 554.2316(3)(c) ("[A]n implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade."); Earl Brace, 708 F.Supp. at 710 (fact that plaintiff had used the product and read instructions previously demonstrates that he

---

11. "Whether a term or clause is 'conspicuous' or not is for decision by the court." Iowa Code § 554.1201(10).

12. This interpretation is consistent with Iowa Code § 554.1201(10) which provides that a term is "conspicuous when it is so written that a reasonable person against whom it is to operate *ought to have noticed it.*" Iowa Code § 554.1201(10) (emphasis added).

13. David Bruce's generally reads every agricultural product label before applying it. Plaintiffs have purchased Zeneca products every year since 1983. These purchases have included Dyfonate, the product at issue in this case, in 1985, 1986, 1987, and 1990. David Bruce read the Dyfonate label before applying it in 1985, 1986, 1987, 1990, and 1992.

**792**

knew or should have known of the disclaimer through course of performance).

As a result, Plaintiffs are precluded from bringing their claims of Breach of Implied Warranty of Fitness for a Particular Purpose (Division I) and Breach of Warranty of Merchantability (Division II).

2. Limitation of Consequential Damages [14]

■ Zeneca expressly warranted Dyfonate and limited its liability for breach of that warranty to refund of the purchase price. Plaintiffs assert that the limitation on damages is unconscionable and therefore unenforceable. Iowa Code § 554.2719 allows a party to limit or exclude consequential damages unless such limitation or exclusion is unconscionable. Iowa Code § 554.2719(3). The determination of whether a limitation of liability is unconscionable is a question of law for the Court. Iowa Code § 554.2302.

■ "In considering a claim of unconscionability the court should examine the factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." *Gentile v. Allied Energy Products, Inc.*, 479 N.W.2d 607, 609 (Iowa App.1991) (citing *C & J Fertilizer v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975)). A bargain is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Lakeside Boating and Bathing, Inc. v. State*, 402 N.W.2d 419, 422 (Iowa 1987) (citations omitted).

Plaintiffs are experienced and sophisticated farmers who farm approximately 2,500 acres a year. Their farming operation generated between 1 million and 2 million dollars annually between 1990 and 1992. Plaintiffs have purchased 32 different agricultural chemical products which have all contained disclaimers of warranty and limitation of liability clauses between 1982 and 1993. In addition, as discussed previously, through their course of dealing with these agricultural products, including several Zeneca products, Plaintiffs knew of or should have known of such disclaimers and limitation of liability clauses on the products.

The Plaintiffs are not without recourse due to the limited liability provision on the Dyfonate label. Even though the Plaintiffs are precluded from seeking consequential economic loss damages, they are still able to seek a refund of the purchase price of the Dyfonate. The decision by Zeneca to limit damages, in the absence of other evidence, may be due to "the uncertainties inherent in the agricultural business ... such as planting, cultivating, harvesting, and marketing decisions, [that] are uniquely within the control of the farmer...." *Lindemann v. Eli Lilly and Company*, 816 F.2d 199, 204 (5th Cir.1987).

Based on the foregoing, the Court concludes that Zeneca's limitation of liability clause contained on its label is not unconscionable. *See Id.* at 203–05 (herbicide manufacturer's exclusion of consequential damages was not unconscionable where farmers were commercially experienced, had course of dealing with the manufacturer for over 20 years, and the decision of the herbicide manufacturer to limit damages was a reasonable allocation of unknown or undetermined risks). As a result, based on the express terms of the limitation of liability clause, Plaintiffs cannot recover consequential damages pursuant to their Breach of Express Warranty claim. Rather, their recovery is limited to the price of the product.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is granted on Plaintiffs' claims for Breach of Implied Warranty of Fitness for a Particular Purpose (Division I), Breach of Warranty of Merchantability (Division II), and Strict Liability (Division IV). Plaintiffs are also precluded from seeking consequential damages based on the Breach of Express Warranty claim (Division III). Insofar as Zeneca's motion seeks further relief, it is denied.

---

**14.** Even though the Court has determined that as non-privity buyers, Plaintiffs cannot recover consequential economic loss damages under their warranty claims, the Court will also address the issue of the disclaimer's limitation of liability.