NUTECH SEED, LLC, an Iowa limited liability company, Plaintiff/Counterclaim–Defendant,

v.

Brandon ROUP, an individual, Defendant/Counterclaim–Plaintiff.

CIVIL NO. 4–14–cv–00105

United States District Court, S.D. Iowa, Central Division.

Signed 08/20/2015

784

Todd P. Langel, Faegre Baker Daniels, LLP, Des Moines, IA, for Plaintiff/Counterclaim–Defendant.

Jon H. Johnson, Johnson Law PLC, Sidney, IA, for Defendant/Counterclaim-Plaintiff.

## ORDER

RONALD E. LONGSTAFF, Senior Judge United States District Court

THE COURT HAS BEFORE IT plaintiff/counterclaim-defendant NuTech Seed, LLC's ("NuTech") motion for summary judgment, filed May 11, 2015. Defendant/counterclaim-plaintiff Brandon Roup ("Roup") resisted the motion on June 17, and NuTech filed a reply on June 29, 2015.

Meanwhile, on June 17, 2015, Roup filed a motion to amend/correct answer. NuTech resisted the motion on July 2, 2015, and both motions are considered fully submitted.

Due to its impact on the summary judgment motion, the Court will begin by addressing the motion to amend.

## I. MOTION TO AMEND

### A. Background

Detailed facts leading up to this action are presented in conjunction with the motion for summary judgment, below. Briefly, NuTech, an Iowa-based limited liability company, alleges that in April 2013, NuTech and Roup entered into a written credit agreement ("the Agreement") whereby Roup would purchase seed corn from NuTech pursuant to the terms set forth in the Agreement. Among other provisions, the Agreement afforded Roup, a Missouri farmer, the opportunity to pay for the seed in the fall of 2013, rather than upon receipt of the seed.

NuTech alleges that Roup failed to pay as required, and filed the present breach of contract action against Roup–as an individual–in March 2014. On April 16, 2014, Roup filed an answer to the complaint as an individual, in which he expressly admitted that he entered into an agreement "to purchase seed corn from NuTech pursuant to the terms of a credit agreement" formed on April 30, 2013. Complaint at ¶ 7; Answer, Section I, at ¶ 3. Roup also admitted that the Agreement provided in relevant part that the "Applicant understands and agrees to meet [NuTech's] terms of sale, to pay finance charges assessed, and pay all reasonable collection expenses including actual attorney's fees in the event of a default." Complaint at ¶¶ 8, 10; Answer, Section I, at ¶ 3. Roup then included within his Answer counterclaims for breach of implied contract and breach of implied warranty under the Uniform Commercial Code.

The parties subsequently prepared a proposed Scheduling Order, which was adopted by the Court on July 29, 2014. The Scheduling Order set December 1, 2014 as the deadline for filing motions to amend pleadings or add parties. The discovery deadline was set for April 6, 2015.

NuTech filed its motion for summary judgment on May 11, 2015. Subsequently, on June 17, 2015, Roup filed a motion to amend/correct his April 16, 2014 Answer. Roup claims that "at all times pertinent to this action," Roup was in fact acting as Roup Farms Inc., and that NuTech was aware that it was contracting with the entity, and not the individual. Motion to Amend Answer, at 1. Roup further argues that when NuTech took his deposition on April 2, 2015, he discovered that the signature on the 2013 Fall Term Application is neither his signature, "nor the signature of anyone with authority to sign for him." Id.[1] Accordingly, Roup seeks to amend his Answer by substituting "Roup Farms LLC" wherever he has answered as an individual

---

1. Roup admitted in his deposition that the signature in fact is that of his wife. Deposition of Brandon Roup ("Roup Dep.") at 25: 20–24, Def.'s Summary Judgment App. at 34.

"defendant." He further seeks to amend his Answer by adding an affirmative defense alleging that NuTech's disclaimer of an implied warranty is unconscionable.

NuTech resists Roup's motion to amend, arguing that Roup has not and cannot establish good cause for failing to meet the deadlines set forth in the Scheduling Order.

### B. Governing Law

As noted by NuTech, the standard for evaluating a motion to amend an answer depends on when the defendant files his motion. A party may amend a pleading once "as a matter of course" within 21 days of serving the pleading, or, if the pleading requires a responsive pleading, "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). In all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave. *Id.*

■ "Although amendment of a [pleading] should be allowed liberally to ensure that a case is decided on its merits ... there is no absolute right to amend." *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996) (citations omitted). "[L]eave may be denied for many reasons, including 'undue prejudice to the non-moving party, or futility of the amendment.'" *Friedman v. Farmer*, 788 F.3d 862, 869 (8th Cir.2015) (quoting *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003)).

"When a motion to amend is filed beyond the scheduling order's deadline for such motions, Rule 16(b) comes into play, as well." *Scott v. City of Sioux City, Iowa*, 23 F.Supp.3d 1017, 1019 (N.D. Iowa 2014). Pursuant to Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

### C. Whether Roup has Established Good Cause to Amend

As set forth above, the Scheduling Order in the present case sets December 1, 2014 as the deadline for filing motions to amend pleadings or add parties. Roup filed his present motion to amend on June 17, 2015–more than six months after the December 1, 2014 deadline. He therefore must establish good cause to file the proposed, untimely amendment.

#### 1. The Addition of Roup Farms

■ Roup first seeks to amend his Answer by substituting "Roup Farms LLC" in place of "defendant." " 'The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.' " *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). In the present case, Roup alleges that he was unable to meet the amendment deadline because he did not know that the signature on the Agreement was not his until his April 2, 2015 deposition.

Roup's argument is both unpersuasive and potentially misleading to the Court. NuTech attached to its Complaint a copy of the Agreement, which contains the disputed signature. Exh. 1 to Complaint at 3, Def.'s Summary Judgment App. at 9. Furthermore, Roup admitted in his deposition that he had received and "seen" a copy of the Agreement when it was served upon him along with the Complaint. Deposition of Brandon Roup ("Roup Dep.") at 23:13–18. Had Roup read the Complaint in its entirety, he undoubtedly would have discovered the signature, which he knew to be his wife's signature. Roup Dep. at 25: 20–24, Def.'s Summary Judgment App. at 34. He therefore cannot show that " 'despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner.' " *Catipovic v.*

*Turley*, 295 F.R.D. 302, 307 (N.D. Iowa 2013) (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 590 F.Supp.2d 1093, 1100 (N.D. Iowa 2008)). Absent good cause, the Court cannot allow Roup to change his strategy at this late date.[2]

### 2. Additional Affirmative Defense

■ Roup also seeks to add an additional affirmative defense alleging that NuTech's disclaimer of an implied warranty is unconscionable. Roup has failed to offer any potential justification–such as newly discovered facts or a legal development–that could establish good cause for such an amendment.

Accordingly, Roup's motion to amend is denied in its entirety.

## II. SUMMARY JUDGMENT MOTION

### A. Undisputed Facts

The following relevant facts either are not in dispute or are viewed in favor of defendant counterclaim-plaintiff Roup.[3] Roup began his farming operation in 2009 under his own name, before organizing and operating as Roup Farms, LLC in 2010. Roup Farms leases and operates multiple farms in or around Mound City, Missouri. In 2013, Roup farmed approximately 1,700 acres.

Roup first purchased seed from Nu-Tech[4] in 2011. Between 2011 and 2013, NuTech was the sole supplier of seed to Roup. On April 30, 2013, Roup entered into a contract to purchase seed corn from NuTech for the 2013 growing year under certain credit terms (hereinafter "the Agreement"). Under the terms of the Agreement, Roup promised to pay NuTech all amounts owed for the seed before December 1, 2013. The Agreement also provided that if Roup failed to pay in full by December 1, 2013, certain financing charges would be added to his outstanding balance.

NuTech delivered the seed corn to Roup through its network of sales representatives during the 2013 planting season. Of the 640 units of seed corn provided, 550 were delivered in Pro Boxes and only 90 were delivered in bags. Pro, or "Hard Boxes" are black boxes that contain 40 or 50 units of seed and can be loaded onto seed tenders. Affixed to each Hard Box was an 8 ½ "x 11" label in a clear plastic envelope. These labels described the seed corn contained in the box, and provided the terms and conditions of sale. All bags of seed corn received by Roup also contained substantially similar terms and conditions of sale on the side of each bag.

**2.** Moreover, Roup's assertion that his wife's signature is "fraudulent" is misleading, since he did not dispute that she had authority to sign the document when questioned in his deposition:

Q. Okay. Are you saying–is it your position that she shouldn't have signed [The Agreement]?

A. No, I'm not saying that. I'm just saying that's not my signature. My wife signed for the seed that Chris brought to the Northwest Fertilizer. I didn't sign that document. I was in the field.

Roup Dep. at 26: 9–15; Def.'s Summary Judgment App. at 34.

Even assuming Roup's wife lacked apparent authority to sign the Agreement, by filing his April 16, 2014 Answer that expressly admitted he entered into the Agreement attached to the Complaint, Roup in essence ratified his wife's signature.

**3.** Roup responded with a general denial to several paragraphs in NuTech's statement of undisputed facts. Absent a specific reference to the types of evidence allowed under Local Rule 56 that contradicts the particular statement at issue, the Court must deem the statement at issue to be admitted. *See* Local Rule 56(b). The Court also must deem admitted all allegations previously admitted by Roup in his April 16, 2014 Answer.

**4.** NuTech is a limited liability company of which Pioneer Hi–Bred International, Inc. ("Pioneer") is the sole member.

Each label affixed to a Hard Box contained the following warranty and liability limiting language:

**USE RESTRICTIONS, LIMITATION OF WARRANTY AND LIABILITY; OTHER TERMS**

**IMPORTANT NOTICE: PLEASE READ COMPLETELY BEFORE OPENING. BY OPENING THIS BAG, YOU ACKNOWLEDGE A CLEAR UNDERSTANDING AND AGREE TO THE TERMS OF YOUR PURCHASE, INCLUDING YOUR OBLIGATIONS, RESTRICTIONS AND RIGHTS OF USE AS STATED FULLY ON THE ACCOMPANYING MATERIALS, INCLUDING ANY AND ALL OF THE BAG AND TAG RESTRICTIONS, INVOICE RESTRICTIONS AND, WHEN APPLICABLE, TECHNOLOGY USE AGREEMENT AND PRODUCT USE GUIDE.... IF YOU DO NOT AGREE WITH THESE TERMS, DO NOT OPEN THIS BAG. PLEASE CONTACT YOUR SEED PROVIDER REGARDING THE RETURN POLICY.**

**PRODUCT DESCRIPTION EXPRESS WARRANTY**: The seed or other products purchased herewith conform to the descriptions on the label within tolerances, if any, established by law. **DISCLAIMER OF WARRANTY**: TO THE EXTENT ALLOWABLE BY LAW, THE EXPRESS WARRANTY ABOVE EXCLUDES AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF **MERCHANTABILITY** AND OF **FITNESS FOR A PARTICULAR PURPOSE** WHICH ARE HEREBY EXPRESSLY DISCLAIMED. This warranty is contingent upon the proper use in the application for which the seed or products were intended and does not cover seek or products which have been modified in any manner (including, but not limited to, insecticide or fungicide seed treatment not provided with this product) or which have been subjected to abuse, misuse, alteration, or neglect.

**LIMITATION OF LIABILITY**: The remedy of Purchaser or any other person, (whether such loss results from breach of warranty, contract, tort, strict liability, or negligence) shall be limited solely and exclusively to the amount of the purchase price of the seed or other products or replacement of the seed or other products. For any action brought related to this product, in no event shall Purchaser seek indirect, consequential or incidental, punitive, exemplary or multiplied damages sustained by Purchaser or any other person. Purchaser agrees not to assert any non-contractual claim arising under state law, arising out of or relating to the purchase of any product. Purchaser, having the expertise and knowledge in the intended use of products and any articles made therefrom, assumes all risk and liability resulting from use of the products delivered hereunder, whether used singly or in combination with other products.

Hard Box Label, Def.'s App. at 26–27.

Roup admitted that the Hard Box labels contained the terms and conditions of sale, and that NuTech's Hard Boxes have contained a substantially similar disclaimer each year that Roup has ordered seed from NuTech. In addition, Roup indicated that he also has seen similar terms and conditions from seed companies in the past, including labels on seed bags that likely contained the same language.

The Agreement entered into by NuTech and Roup further provides that the "terms of this note are governed by the laws of the State of Iowa" and that "[t]he undersigned submits to the jurisdiction of the courts of the State of Iowa." Complaint at

¶ 13; Answer, Section I, at ¶ 3. The terms and conditions of sale contained on the labels affixed to all Hard Boxes similarly contained a section entitled "**CONSENT TO JURISDICTION/VENUE**" which provided:

This agreement is governed by the laws of the state of Iowa and the United States (other than the choice of law rules). Purchaser or any other person consents to the jurisdiction of the Iowa Federal and State courts for resolution of any disputes, whether or not such are first subject to arbitration, negotiation, or mediation under the applicable State's seed laws where purchase occurred.

Hard Box Label, Def. App. at 26–27.

Roup admitted that he accepted the seed corn delivered by NuTech for the 2013 crop year, and neither has rejected nor revoked his acceptance of any of the seed corn he received from NuTech in past years. Roup planted the accepted seed corn on the 1,700 acres operated by Roup Farms in 2013.

In the Fall of 2013, NuTech sent Roup a letter reminding him that December 1, 2013, was the upcoming due date for payment. This letter warned Roup that if he did not pay prior to December 1, 2013, the finance charges provided for in the Agreement that had been accruing since July 31, 2013 would be added to his account.

Roup did not make a payment on or before December 1, 2013, and, in fact, has never provided any payment to NuTech for the seed corn at issue.

NuTech filed the present three-count complaint against Roup on March 19, 2014. Count I alleges that Roup's failure to make final payment for the seed delivered by NuTech breached the express contract between the parties. Complaint at ¶¶ 18–22. Count II sets forth a parallel cause of action for breach of implied contract. *Id.* at ¶¶ 23–27. Lastly, Count III alleges a cause of action against Roup under the Uniform Commercial Code. *Id.* at ¶¶ 28–38. In his April 16, 2014 Answer, Roup disputed all three causes of action, and pled counterclaims for breach of implied contract and breach of implied warranty under the Uniform Commercial Code. Specifically, Roup asserted that the corn seed provided by NuTech violated implied warranties of fitness and merchantability. Roup contends that the seed planted on the "Watson Farm," which constituted 841 of the 1,700 acres farmed by Roup in 2013, showed excessive ear-drop. The ear-drop allegedly resulted in a reduced yield.

Notably, Roup has only claimed damages on the Watson Farm. This property is located on Missouri River bottom land and is commonly subjected to flooding. In 2013 alone, the Watson Farm flooded at least twice. In fact, the 2013 corn crop on the Watson Farm suffered so much damage due to flooding and drought that in a letter dated October 13, 2013, Roup asked his landlord to lower his rent payment. The letter stated in part that during the 2013 growing season, the "Watson farm was under water, destroying 3–400 acres of crops. Then in the upcoming months, Drought set in, ruining at least another 200 acres." October 13, 2013 Roup Farms Letter to AECI Land LLC, Def. App. at 25. Despite flooding and drought "destroying" a significant portion of the Watson Farm's crop, Roup's counterclaims seek compensation for all 841 acres of the Watson Farm.

NuTech now moves for summary judgment on its breach of contract claim, arguing that no material facts exist to dispute that Roup defaulted on the Agreement, and that it effectively disclaimed all warranties.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

■ Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 647 F.3d 833, 837 (8th Cir. 2011). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Greer v. Shoop*, 141 F.3d 824, 826 (8th Cir. 1998). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material .... Factual disputes that are irrelevant or unnecessary will not be counted."

### B. Whether NuTech is Entitled to Summary Judgment on its Contract Claim

■ As set forth above, NuTech seeks summary judgment on its breach of contract claim, arguing that no material facts exist as to whether Roup received the corn seed promised from NuTech under the Agreement, and failed to pay the amount due by the date set forth in the Agreement. Initially, the Court notes that Roup does not dispute the applicability of Iowa law. *See* NuTech's Statement of Undisputed Material Facts ("SUMF") at ¶ 30, and Roup's Response thereto (indicating

Agreement provides that the "terms of this note are governed by the laws of the State of Iowa."). Nor does either party dispute that the transaction is a "transaction in goods" and is therefore governed by the Uniform Commercial Code ("UCC"). *See* Complaint at ¶¶ 29–33; Answer at ¶ 14.

■ Under the UCC, as adopted in Iowa, "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 554.2710, the price ... of goods accepted ...." Iowa Code § 554.2709(1). In essence, to recover the price of accepted goods under § 554.2709(1), a party must show: 1) it performed according to the contract terms; 2) acceptance of the goods by the buyer; 3) the date for payment has past; and 4) the buyer failed to pay by this date. *See, e.g., Purina Mills, L.L.C. v. Less*, 295 F.Supp.2d 1017, 1033 (N.D. Iowa 2003) (citing 24 WILLISTON ON CONTRACTS § 66:21).

None of the above issues is disputed in the present case. Rather, in resisting NuTech's motion for summary judgment, Roup argues first that he is not personally bound under the Agreement, and that the proper defendant is in fact Roup Farms, LLC. Secondly, he contends he has the right to withhold payment if the product is defective. Neither of these arguments provides a basis to withhold summary judgment against him.

With regard to Roup's first argument, the Agreement states explicitly that the party contracting with NuTech was "Brandon Roup." Exh. 1 to Complaint at 2. There is no mention of Roup Farms LLC in the Agreement. *Id.* Furthermore, the Court previously has denied Roup's motion to amend his answer, thereby binding Roup to his admission that he is in fact the

contracting party. *See* Complaint at ¶ 7; Answer, Section I, at ¶ 3.

 Even if Roup did not make this admission in his Answer, however, Roup did not contest that his wife was authorized to sign the document when questioned in his deposition:

Q. Okay. Are you saying–is it your position that she shouldn't have signed [The Agreement]?

A. No, I'm not saying that. I'm just saying that's not my signature. My wife signed for the seed that Chris brought to the Northwest Fertilizer. I didn't sign that document. I was in the field.

Roup Dep. at 26: 9–15; Def.'s Summary Judgment App. at 34. Under Iowa law, an agent may bind a principal to an agreement if some act on the part of a principal enables a third party to believe that the agent has apparent authority. *See, e.g., Waukon Auto Supply v. Farmers & Merchants Savings Bank,* 440 N.W.2d 844, 847 (Iowa 1989) (citing *Clemens Graf Droste Zu Vischering v. Kading,* 368 N.W.2d 702, 711 (Iowa 1985)). Admittedly, the record is insufficient to allow the Court to find as a matter of law that Roup's wife had apparent authority to bind Roup to the Agreement. Regardless of whether Roup's wife originally was authorized to sign on his behalf, however, Iowa law states that a principal may "ratify" an unauthorized signature through " 'conduct that justifies a reasonable assumption that the person so consents.' " *Life Investors Ins. Co. of Am. v. Estate of Corrado,* 838 N.W.2d 640, 646, 646 (Iowa 2013) (quoting Restatement (Third) of Agency § 4.01(2)). Here, Roup clearly ratified the Agreement both when he accepted and used the seed, and also when he later admitted in his Answer that he entered into the Agreement attached to

the Complaint. *See id.* at 648 ("A person should not be able to accept the benefits of a contract even if the signer's acts are unauthorized, but deny his or her obligations under the contract because the signer's acts are unauthorized.").

Roup also argues he is legally entitled to withhold payment pursuant to Iowa Code § 554.2717 if a defective product has caused him to incur consequential damages. This section provides: "The buyer on notifying the seller of the buyer's intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." Iowa Code § 554.2717. In the present case, however, Roup not only failed to provide any notice of his intention to withhold funds, but also failed to create a material issue of fact as to whether NuTech fulfilled its contractual obligations. Roup's claim that NuTech "breached" the contract by providing a defective product is addressed with regard to Roup's implied warranty counterclaims, below. Having found no material facts with regard to whether NuTech has established its breach of contract claim under the UCC, the Court finds NuTech's motion for summary judgment is appropriately granted.[5]

C. Whether Material Issues of Fact Exist Regarding Roup's Counterclaims

1. Breach of Implied Contract

 NuTech also moves for summary judgment with regard to Roup's counterclaims for breach of implied contract and breach of implied warranty. With regard to his counterclaim for breach of implied contract, the Court notes that there is no material issue of fact as to whether the

5. In view of the fact that awarding damages on NuTech's remaining causes of action would be duplicative of those available under

the UCC, the Court need not address the remaining claims individually.

parties entered into an express written contract for the purchase of seed for the 2013 crop year. Complaint at ¶ 19; Answer at ¶ 6 (admitting allegation of Complaint that: "For the 2013 crop year, NuTech and Defendant entered into an express written contract or contracts for the purchase of seed."). Iowa courts repeatedly have held that "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract. *Giese Const. Co. v. Randa*, 524 N.W.2d 427, 431 (Iowa 1994) (citing *Clemens Graf Droste Zu Vischering*, 368 N.W.2d at 712). Summary judgment therefore is granted with regard to Roup's counterclaim for breach of implied contract.

2. Breach of Implied Warranty

█ Roup's Answer also includes a counterclaim for breach of implied warranty. As set out in the background section, the label affixed to each Hard Box delivered by NuTech to Roup contained the following language:

**USE RESTRICTIONS, LIMITATION OF WARRANTY AND LIABILITY; OTHER TERMS**
**IMPORTANT NOTICE: PLEASE READ COMPLETELY BEFORE OPENING. BY OPENING THIS BAG, YOU ACKNOWLEDGE A CLEAR UNDERSTANDING AND AGREE TO THE TERMS OF YOUR PURCHASE, INCLUDING YOUR OBLIGATIONS, RESTRICTIONS AND RIGHTS OF USE AS STATED FULLY ON THE ACCOMPANYING MATERIALS, INCLUDING ANY AND ALL OF THE BAG AND TAG RESTRICTIONS, INVOICE RESTRICTIONS AND, WHEN APPLICABLE, TECHNOLOGY USE AGREEMENT AND PRODUCT USE GUIDE.... IF YOU DO NOT AGREE WITH THESE TERMS, DO NOT OPEN THIS BAG. PLEASE**

**CONTACT YOUR SEED PROVIDER REGARDING THE RETURN POLICY.**
**PRODUCT DESCRIPTION EXPRESS WARRANTY:** The seed or other products purchased herewith conform to the descriptions on the label within tolerances, if any, established by law. **DISCLAIMER OF WARRANTY:** TO THE EXTENT ALLOWABLE BY LAW, THE EXPRESS WARRANTY ABOVE EXCLUDES AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF **MERCHANTABILITY** AND OF **FITNESS FOR A PARTICULAR PURPOSE** WHICH ARE HEREBY EXPRESSLY DISCLAIMED. This warranty is contingent upon the proper use in the application for which the seed or products were intended and does not cover seek or products which have been modified in any manner (including, but not limited to, insecticide or fungicide seed treatment not provided with this product) or which have been subjected to abuse, misuse, alteration, or neglect.

Hard Box Label, Def's App. at 26–27.

Iowa law allows a seller to exclude an implied warranty of merchantability if the language both (1) mentions merchantability; and (2) is conspicuous. Iowa Code § 554.2316(2). An implied warranty of *fitness* likewise may be modified or excluded if the exclusion is (1) in writing; and (2) conspicuous. *Id.*

With regard to whether a term is "conspicuous," the Iowa Code provides the following guidance:

j. "Conspicuous", with reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. *Whether a term is "con-*

*spicuous" or not is a decision for the court.* Conspicuous terms include the following:

(1) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(2) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Iowa Code § 1201(j) (emphasis added).

There is no dispute that NuTech's disclaimer is in writing and mentions merchantability. The sole issue is whether it is sufficiently conspicuous as to meet the definition set forth under Iowa Code § 1201(j). A review of the disclaimer confirms that it contains a heading in capital letters in bold type, which contrasts with the surrounding text. *See id.* (outlining example of a conspicuous method of display or presentation). In *Bruce v. ICI Americas, Inc.*, 933 F.Supp. 781, 791 (S.D. Iowa 1996), this Court found such a display method to meet the definition set forth under the Iowa Code. *Id.* ("Because the printed heading and language of the exclusion is in bold, capital letters, the Court finds that a reasonable person should have noticed it.").

In his resistance brief, Roup contends that the labels were not displayed in a sufficiently convenient manner as to be conspicuous under Iowa law. Specifically, he argues that the seed was transported to him on flatbed trailers, with the disclaimer located on the back of the label approximately eight feet from the ground. He also adds that the seed was delivered "during planting season when farmers are at their busiest and not likely to examine labels."

Brief in Resistance to NuTech Seed, LLC's Motion for Summary Judgment ("Roup's Resistance Brief"), at 7.

As noted by NuTech, however, Roup admitted in his Answer that "[e]ach package of NuTech seed received by the Defendant in or for 2013 contained the terms and conditions of sale . . . ." Complaint, at ¶ 13. Even if Roup had not in fact read the disclaimer, he cannot deny he had a " 'reasonably opportunity to read it.' " *Bruce*, 933 F.Supp. at 791 (" 'If a disclaimer is conspicuous, it is effective so long as the buyer receives the disclaimer and has a reasonable opportunity to read it.' ") (quoting *Adams v. American Cyanamid Co.*, 1 Neb.App. 337, 498 N.W.2d 577, 587 (1992)). Moreover, Roup stated in his deposition not only that he was aware of the "language on the back side of the [NuTech] bag[s]," but also that he has seen similar language from other seed companies in prior years. Roup Dep. at 33:21–34:5; Def's App. at 36. Iowa Code § 554.2316(3)(c) expressly provides that an implied warranty also may be excluded or modified "by course of dealing or course of performance or usage of trade." *See also Bruce*, 933 F.Supp. at 791 (finding that plaintiff's "previous extensive use of agricultural chemical products, including several other Zeneca products, which contained similar disclaimers to the one in question, demonstrates that he knew or should have known of the disclaimer").

▪▪▪ Lastly, Roup urges the Court to find the disclaimer is unconscionable based on the fact "all of the large seed corn producers place the same disclaimer of implied warranties on their labels." Roup's Resistance Brief, at 5. A similar unconscionability argument was raised and rejected in *Bruce*. In evaluating the issue of unconscionability, a court should consider such factors as " 'assent, unfair surprise, notice, disparity of bargaining pow-

er, and substantive unfairness.'" *Bruce,* 933 F.Supp. at 792 (quoting *Gentile v. Allied Energy Products, Inc.,* 479 N.W.2d 607, 609 (Iowa Ct. App. 1991) (add'l citation omitted). As stated by this Court: "A bargain is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Id.* (quoting *Lakeside Boating and Bathing, Inc. v. State,* 402 N.W.2d 419, 422 (Iowa 1987)) (add'l citations omitted). Like the plaintiff in *Bruce,* Roup is an experienced farmer responsible for almost 2,000 acres of farmland yearly. He has purchased corn seed for many years from NuTech, and from other companies before NuTech. He cannot now claim surprise or lack of notice with regard to the terms and conditions of the sale. *Id.*

Finding no substantive basis on which to distinguish NuTech's disclaimer from that used in *Bruce,* the Court finds that the disclaimer is conspicuous–*see* Iowa Code § 1201(j) (whether term is conspicuous is a decision for the court)–and that no genuine issue of material fact exists as to whether NuTech effectively disclaimed any implied warranties. Summary judgment therefore is granted with regard to Roup's counterclaim for breach of implied warranty.

## III. CONCLUSION

For the reasons outlined above, Roup's motion to amend/correct answer is denied. NuTech's motion for summary judgment is granted in full. NuTech is directed to submit a proposed form of judgment on or before September 11, 2015, reflecting the principal balance under the Agreement and accrued finance charges. Within twenty (20) days from entry of judgment, NuTech may submit an application for reasonable attorney fees, as allowed under the Agreement.[6] *See, e.g., Lakes Gas Co. v. D*

6. *See* Exh. 1 to Complaint, at 2 ("Applicant understands and agrees to ... pay all reason-

*& J Feed Serv., Inc.,* No. C11–1013, 2013 WL 1385513, at *1 (N.D. Iowa Apr. 4, 2013) ("Iowa law explicitly authorizes the recovery of attorney's fees when contained in a written contract."). Such fees shall be taxed as part of the costs. Iowa Code § 22 (2013) ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court.").

IT IS ORDERED.