# IN THE COURT OF APPEALS OF IOWA

No. 15-0311
Filed April 6, 2016

**R.J. MEYERS COMPANY,**
    Plaintiff-Appellant,

**vs.**

**REINKE MANUFACTURING
COMPANY, INC., and HOOK'S
POINT IRRIGATION,**
    Defendants-Appellees.

_____

    Appeal from the Iowa District Court for Benton County, Christopher L.

Bruns, Judge.


    The plaintiff appeals from the adverse grant of summary judgment in this

action for breach of warranty.  **AFFIRMED.**


    David J. Dutton and Erich D. Priebe of Dutton, Braun, Staack & Hellman,

P.L.C., Waterloo, for appellant.

    David L. Riley of McCoy, Riley & Shea, P.L.C., Waterloo, for appellee

Hook's Point Irrigation.

    Todd W. Weidemann and Ryan A. Kehm of Woods & Aitken, L.L.P.,

Omaha, Nebraska, for appellee Reinke Manufacturing Company.


    Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

This case comes before the court on appeal following the grant of summary judgment in favor of defendants Reinke Manufacturing Company, Inc., and Hook's Point Irrigation and adverse to plaintiff R.J. Meyers Company. The legal dispute arises out of an allegedly defective irrigation system Hook's Point sold to Meyers.

I.

Jim Meyers, age sixty five, is the sole proprietor of R.J. Meyers Company. Meyers is in the sodding and turf business. Meyers started the company in 2010, but he has more than four decades of experience in the industry. Reinke is a manufacturer of irrigation systems. Hook's Point is in the business of selling and servicing irrigation systems, and it is a non-exclusive dealer of Reinke products.

In January 2011, Meyers had coffee with Mark Stumpenhorst to discuss his need for an irrigation system. Stumpenhorst was a representative of Hook's Point.

In July of 2011, Hook's Point sent an irrigation system proposal to Meyers. The proposal contained an acknowledgment that "Purchase of the system described above will be subject to the Terms and Conditions of the Irrigation System Purchase Agreement between the Dealer and the Customer, including but not limited to the Reinke Irrigation Systems Warranty."

In August or September of 2011, Meyers purchased an irrigation system from Hook's Point for Meyers' 154-acre sod farm. The purchase agreement was solely between Meyers and Hook's Point. Reinke was the manufacturer of the irrigation system sold by Hook's Point to Meyers. Meyers admitted he signed the

purchase agreement, but the parties were not able to find the signed copy during discovery in this matter. An unsigned copy of the purchase agreement was sent to Meyers via email in September 2011. There is no genuine dispute the unsigned purchase agreement attached to the September email is an accurate copy of the parties' purchase agreement. The purchase agreement contained an acknowledgment the "dealer has provided me with a copy of the Reinke irrigation Systems Warranty." The form also provided, "I acknowledge receipt of the Warranty and have read the terms contained in the Warranty."

The purchase agreement included a copy of Reinke's Certificate of Warranty and the full warranty. Meyers signed a warranty certification on October 9, 2011, stating the dealer explained the warranty to him. The Certificate of Warranty provided the unaltered irrigation system "will be free from defects in materials and workmanship" and identified several particulars. The Certificate of Warranty provided any defective components "within the coverage of this Limited Warranty," "shall be repaired or replaced, at Reinke's sole option." The terms and conditions of the warranty provided:

> **REINKE IS NOT LIABLE FOR ANY REPRESENTATIONS MADE BY ANY DEALER THAT EXCEED THE TERMS OF THIS WRITTEN LIMITED WARRANTY.** Neither Reinke nor the Dealer shall be liable for actual or consequential damages due to any delays or defaults in making delivery occasioned by any cause. Delivery of the components of the Irrigation System by an approximate date is subject to the availability of such components. It is understood that any date specified is an estimated and projected delivery date between the Dealer and Purchaser. **THE IRRIGATION SYSTEM COVERED BY THIS WARRANTY IS SOLD SUBJECT TO THE MANUFACTURER'S WARRANTY ONLY. THE IRRIGATION SYSTEM MANUFACTURED BY REINKE SHALL BE SUBJECT TO THE LIMITED WARRANTY SET FORTH HEREIN, WHICH THE DEALER ADOPTS AND EXTENDS TO THE PURCHASER.** . . . .

D. <u>LIMITATIONS OF LIABILITY</u>

REINKE AND PURCHASER AGREE THAT, IN CONSIDERATION OF THE LIMITED WARRANTY EXPRESSED HEREIN, ALL OTHER WARRANTIES OTHER THAN TITLE, EITHER EXPRESS OR IMPLIED, WHETHER ARISING UNDER LAW OR IN EQUITY, INCLUDING WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED. . . . .

REINKE AND PURCHASER AGREE THAT THE PURCHASER'S SOLE AND EXCLUSIVE REMEDY FOR ANY DEFECTS IN THE IRRIGATION SYSTEM DELIVERED HEREUNDER SHALL BE LIMITED TO THE REPAIR AND REPLACEMENT (IN REINKE'S SOLE DISCRETION) OF DEFECTIVE PARTS AS SPECIFIED IN THIS LIMITED WARRANTY. THIS LIMITED WARRANTY SHALL NOT APPLY WITH RESPECT TO ANY CLAIMED DEFECT IN THE IRRIGATION SYSTEM WHICH IN REINKE'S JUDGMENT HAS ARISEN FROM REPAIR NOT AUTHORIZED OR PERFORMED BY REINKE OR THE DEALER, FROM ALTERATIONS OR MODIFICATIONS IN THE IRRIGATION SYSTEM, OR FROM PURCHASER'S MISUSE, NELIGENCE OR ACCIDENT.

NOTWITHSTANDING ANY OTHER PROVISIONS OF THIS LIMITED WARRANTY, IN NO EVENT SHALL REINKE OR ITS DEALERS BE LIABLE, WHETHER ARISING UNDER CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, FOR LOSS OF USE OF THE IRRIGATION SYSTEM; ANTICIPATED BUSINESS OR PROFITS (INCLUDING ANTICIPATED LEASE PAYMENTS); CROP DAMAGES; TRANSPORTATION, TOWING OR RELATED EXPENSES DUE TO REPAIRS, NON-OPERATION, REDUCED OPERATION OR INCREASED EXPENSE OF OPERATION; COST OF PURCHASED OR LEASED REPLACEMENT EQUIPMENT; COSTS DUE TO DELAYS OR DEFAULTS IN MAKING DELIVERY OR INSTALLATION OF THE IRRIGATION SYSTEM, REPLACEMENT EQUIPMENT OR ANY COMPONENT THEREOF; COST OF MONEY; LOSS OF USE OF CAPITAL OR REVENUE; LOSS OF PURCHASER'S TIME; OR FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE OR INCIDENTAL LOSS OR DAMAGE OF ANY NATURE ARISING AT ANY TIME OR FROM ANY CAUSE WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH THE IRRIGATION SYSTEM OR THE USE THEREOF OR ARISING OUT OF A BREACH OF THE PURCHASE CONTRACT OR ANY WARRANTIES ARISING

THEREFROM OR FOR SPECIAL OR GENERAL DAMAGES ARISING FROM ANY ACTS OF NEGLIGENCE OF REINKE OR DEALER, WHETHER SUCH CLAIMS ARE MADE BY PURCHASER OR ANY SUBSEQUENT OWNER, PURCHASER, LESSOR OR LESSEE OF THE IRRIGATION SYSTEM, OR ANY RELATED SUCCESSOR IN INTEREST THERETO. MANUFACTURER DISCLAIMS ALL LIABILITY FOR ANY MODIFICATIONS MADE TO THE IRRIGATION SYSTEM FROM THE TIME IT LEAVES MANUFACTURER'S CUSTODY. NO CLAIM BY PURCHASER OF ANY KIND SHALL BE GREATER IN AMOUNT THAN THE NET PURCHASE PRICE OF THE IRRIGATION SYSTEM.

Hook's Point started installation of the Reinke-manufactured irrigation system in September 2011. Hook's Point completed installation of the irrigation system on October 21. Meyers alleges the system "has never suitably performed for Meyers' sod farm." Meyers claims the irrigation system has suffered numerous, system-wide problems. Some of the identified problems include leaks, automatic shutdown due to malfunction, operation at pressure levels that exceed the system's limits, uneven watering resulting in crop loss, excessive rutting, the failure to start, and uncontrolled automated spraying. Meyers' expert, Jerry Hall, opined the irrigation system was inappropriately designed for the sod farm and was defective. The defendants claim Meyers modified the irrigation system and caused many of the problems. Without regard to who or what caused problems with the irrigation system, it is not disputed that Hook's Point responded to numerous service calls regarding problems with the irrigation system from the time of installation going forward. Stumpenhorst stated, "I have never made this many service calls to one person in this amount of time." The first day of operation of the irrigation system was on October 21, 2011. There

were fifty-five service calls, phone calls, or parts requests from October 22, 2011 to September 9, 2013.

Dissatisfied with the irrigation system, Meyers filed this suit against Hook's Point and Reinke in September 2013. In his petition, Meyers asserted claims for "breach of the implied warranty of fitness" and "breach of the purchase contract." Meyers identified the purchase date as "August of 2011." Meyers sought damages for crop loss, damage to the sod farm, emotional distress for not being able to rely on an adequate and constant flow of water in the irrigation system, and other damages. The defendants moved for summary judgment, and Meyers sought leave to file an amended petition. In the amended petition, Meyers asserted claims for breach of contract, breach of the implied warranty of fitness for a particular purpose, and breach of the implied warranty of merchantability. Subsequently, the defendants filed additional summary judgment papers addressing the impact of the proposed amended petition.

The district court granted the motion to file the amended petition and then ruled on the defendants' motions for summary judgment. The district court concluded the parties entered into a purchase agreement in August of 2011, the terms of the purchase agreement were set forth in the unsigned purchase agreement attached to the September 2011 email, and the terms of the purchase agreement included Reinke's manufacturer's warranty, warranty disclaimers, and limitations of remedies. The district court also concluded there was no disputed issue of fact that Meyers was provided with the warranty information and had an opportunity to review the same prior to entering into the purchase agreement. With respect to the breach of contract claim against Reinke, the district court

concluded the claim failed as a matter of law because there was no privity of contract between Reinke and Meyers. With respect to Meyers' claims for breach of the implied warranties of fitness for a particular purpose and merchantability, the district court held the disclaimers of the implied warranties were conspicuous, Meyers was provided with the disclaimers and had the opportunity to read them, and the disclaimers were thus effective and enforceable. *See* Iowa Code § 554.1201(2)(j) (2013) (defining conspicuous); Iowa Code § 554.2316 (providing for disclaimers of warranties). The district court thus granted Reinke's and Hook's Point's motions for summary judgment on these claims. The district court denied Reinke's motion for summary judgment with respect to Meyers' claim for breach of the express warranty, concluding there was a triable issue of fact on whether Reinke honored the express warranty. The district court granted Hook's Point's motion for summary judgment on the express warranty claim, holding the claim lied solely against Reinke and not Hook's Point.

Meyers filed a motion to reconsider, amend, or enlarge following the district court's ruling on summary judgment. In his motion, Meyers argued he did not have the opportunity to respond to the defendants' additional summary judgment filings. The district court denied the motion. In the ruling on the motion to reconsider, the district court concluded it should have denied Meyers' motion for leave to amend as futile. The district court amended its prior ruling and denied the plaintiff's motion for leave to amend. The district court next addressed the merits of the motion, noting plaintiff's counsel conceded during hearing on the motion "that if the court finds the warranty limitation and exclusion provisions on which the summary judgment motions are based were part of the

parties' contract, then the only claims Plaintiff has that might survive are claims for breach of the express written warranty." The district court concluded there was no genuine issue of fact on whether the warranty disclaimers and limitations of remedies were part of the parties' contract, and denied the motion. The district court reaffirmed "the only claim that has survived the summary judgment motions in this case is whatever claim plaintiff has for breach of Reinke's express written warranty."

After the district court denied the plaintiff's motion to reconsider, amend, or enlarge, the plaintiff sought permission to voluntarily dismiss his remaining claim for breach of the express warranty. The district court granted the motion and dismissed the claim. Meyers timely filed this appeal.[1]

## II.

"This court reviews a district court decision to grant or deny a motion for summary judgment for correction of errors at law." *Griffin Pipe Prods. Co.. v. Bd. of Review*, 789 N.W.2d 769, 772 (Iowa 2010). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id.* The party resisting the motion "cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens v.*

---

[1] Hook's Point contends the voluntary dismissal of the express warranty claim divests this court of appellate jurisdiction because there is no pending litigation. The claim is without merit and need not be addressed any further. *See Estate of Countryman v. Farmers Coop. Ass'n*, 679 N.W.2d 598, 601-02 (Iowa 2004) (concluding there was pragmatic finality and the court had jurisdiction over appeal where several claims were resolved on summary judgment and others subsequently voluntarily dismissed following settlement).

*Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). "The court reviews the evidence in the light most favorable to the nonmoving party." *Griffin Pipe Prods. Co.*, 789 N.W.2d at 772. The court indulges in every legitimate inference the evidence will bear in an effort to ascertain the existence of a genuine issue of material fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). "A fact is material if it will affect the outcome of the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *See Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992).

If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996); *see also* Iowa R. Civ. P. 1.981(3). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

III.

A.

Meyers first argues there is a disputed issue of fact regarding the terms of the purchase agreement. Specifically, Meyers argues the parties entered into an oral purchase agreement in January 2011 and the oral agreement did not contain any warranty, warranty disclaimers, or limitations of remedies. Meyers also argues, in the alternative, the scope of the warranty, warranty disclaimers, or

limitations of remedies arising out of the purported January 2011 oral agreement are ambiguous. Meyers further argues that the written purchase agreement entered into in August or September of 2011 was merely an attempt to modify the prior oral agreement. The arguments are without merit.

An issue of fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *See Fees*, 490 N.W.2d at 57. There is no evidence in this summary judgment record supporting Meyers' argument. Meyers had an initial meeting with Hook's Point in January 2011 to discuss Meyers' need for an irrigation system. Following that discussion, Hook's Point sent to Meyers a proposal in July of 2011. The design and pricing were finalized subsequent to the proposal, and Hook's Point and Meyers entered into the purchase agreement in August or September of 2011. In his pleadings, Meyers admitted this to be true. In his petition and amended petition, Meyers averred the parties entered into the purchase agreement in August 2011. The defendants each admitted this to be correct. Meyers also admitted in his deposition that he had been provided with the warranty information prior to entering into the purchase agreement. Meyers' contention there was some other oral agreement not containing the warranty, warranty disclaimers, and limitations on remedies is delusory and unsupported by evidence. *See Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001) (stating an inference is not legitimate if it is based on speculation or conjecture unsupported by evidence). Further, Meyers' contention he also had some undisclosed contract with Reinke is equally delusory and unsupported by evidence. Meyers never met with or had

communication with Reinke prior to entering into the purchase agreement with Hook's Point.

B.

Meyers argues there is a triable issue of fact as to whether Meyers received the warranty, warranty disclaimers, and limitations on remedies prior to entering into the purchase agreement.

As with Meyers' prior argument, we conclude there is no "genuine" issue of fact. *See Fees*, 490 N.W.2d at 57. The summary judgment record allows only one reasonable inference: Meyers was aware of the warranty, warranty disclaimers, and limitations on remedies. The irrigation system proposal sent to Meyers in July 2011 contained the following language: "Purchase of the system described above will be subject to the Terms and Conditions of the Irrigation System Purchase Agreement between the Dealer and the Customer, including but not limited to the Reinke Irrigation Systems Warranty." The purchase agreement included Reinke's Certificate of Warranty and all warranty information. Meyers admitted he received the warranty information prior to purchase of the irrigation system and was provided an opportunity to read it:

> Q. Were you provided a copy of the warranty before you purchased the machine? A. Somewhere in the exchange of information I'm sure I received – must have received a copy, yes. I would think so.
> Q. Did you understand what that warranty covered? Or you didn't read it at all, just thought it was a warranty? A. I assumed it was as most warranties are, that the product would be – that I would be taken care of.
> Q. Okay. Did you understand that the warranty covered replacement of defective parts of the irrigation system? A. I assume that. I – I've read your warranty.
> Q. Okay. A. But I don't recall exactly what's in it. It's been several years now since I've read it.

Q. Okay. But you were provided it, and you had an opportunity to read it? A. Yes.

Meyers' admission is supported by the available documentation. On October 9, 2011, Meyers signed the customer certification, stating "I certify that I have read the owner's/operator's manual and that my dealer has explained the operation, safety features and warranty of the system to me."

No reasonable jury could conclude Meyers did not receive the warranty information and have the opportunity to read the same prior to entering into the purchase agreement. *See, e.g., All-Iowa Contracting Co. v. Linear Dynamics, Inc.*, 296 F. Supp. 2d 969, 979 (N.D. Iowa 2003) (holding warranty disclaimer was enforceable where received after purchase but price quotation provided prior to purchase provided notice of the warranty).

## C.

Meyers next contends the district court erred in granting summary judgment on the warranty claims because "the limited 'repair or replace' remedy in Reinke's Warranty 'failed of its essential purpose.'" Meyers argues the limited remedy failed because Hook's Point repeatedly and unsuccessfully serviced the irrigation system. Meyers' claim fails because he fails to correctly identify the claims at issue in this appeal, fails to distinguish between express and implied warranties, and fails to distinguish between limitations on remedies and disclaimers of warranties.

Reinke provided an express warranty. With respect to the sale of goods, an express warranty is created by:

a. Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

> bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> b. Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> c. Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Iowa Code § 554.2313(1).

Reinke limited the remedy for breach of the express warranty to repair and replacement of the goods sold. The Iowa Code allows this limited remedy under certain circumstances. *See* Iowa Code § 554.2719(1)(a). However, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." Iowa Code § 554.2719(2). "A remedy's essential purpose 'is to give to a buyer what the seller promised him.'" *Midwest Hatchery & Poultry Farms, Inc. v. Doorenbos Poultry, Inc.*, 783 N.W.2d 56, 62 (Iowa Ct. App. 2010) (citation omitted). "Where repair or replacement can give the buyer what is bargained for, a limitation of remedies does not fail of its essential purpose." *Id.* at 63. Conversely, "[w]here the seller is given a reasonable chance to correct defects and the equipment still fails to function properly, the limited remedy of repair or replacement of defective parts fails of its essential purpose." *John Deere Co. v. Hand*, 319 N.W.2d 434, 437 (Neb. 1982). In other words, where the limited remedy fails, then the buyer may avail itself of other remedies set forth in the UCC, including damages.

The claim at issue in this appeal is not the express warranty. As set forth above, the district court held the express warranty claim against Hook's Point failed as a matter of law because the express warranty was inapplicable to

Hook's Point. Meyers does not argue the district court's ruling was erroneous, and the issue is not properly before us. Also, as set forth above, the district court denied Reinke's motion for summary judgment with respect to Meyers' claim for breach of express warranty, concluding the matter must proceed to trial. However, Meyers voluntarily dismissed his express warranty claim against Reinke and that claim is not properly before us. The only claims presented in this appeal are the implied warranty claims.

The UCC allows for the disclaimer of the implied warranties of merchantability and fitness so long as the disclaimers are in writing and conspicuous. *See* Iowa Code § 554.2316(2). A term or clause is conspicuous when it is so written "that a reasonable person against which it is to operate ought to have noticed it." Iowa Code § 554.1201(2)(j). Language is considered conspicuous if it is in larger type, in a different color, in bold letters, or in capital letters. *See Sharp v. Tamko Roofing Prods., Inc.*, No. 02-0728, 2004 WL 2579638, at *4 (Iowa Ct. App. Nov. 15, 2004). Whether a clause is conspicuous is a question of law for the court to decide. *See id.* "If a disclaimer is conspicuous, it is effective so long as the buyer receives the disclaimer and has a reasonable opportunity to read it." *Bruce v. ICI Ams., Inc.*, 933 F. Supp. 781, 791 (S.D. Iowa 1996).

Here, the disclaimers of the implied warranties were capitalized in bold print and clearly distinct from the surrounding text. The disclaimers were conspicuous. Meyers admitted he was provided with the warranty disclaimers and had the opportunity to read them prior to the contract. Like the district court, we conclude the disclaimers were thus effective and bar any action for implied

warranties. *See, e.g., Bruce*, 933 F. Supp. at 791 ("However, even if Plaintiffs did not actually read the disclaimer, they are still bound by its terms. If a disclaimer is conspicuous, it is effective so long as the buyer receives the disclaimer and has a reasonable opportunity to read it.").

The disclaimer of the implied warranties is not overcome by showing the limited remedy for a breach of the express warranty failed of its essential purpose. The concepts are separate and distinct. As one court explained:

> In advancing its initial legal premise—that is, that Alstom's disclaimer of the implied warranties is invalidated by an ineffectiveness of the express warranties, IDI's "apparent impression of the law is that when a limited remedy fails of its essential purpose the disclaimed warranties are revived." *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1047 (D. Kan. 1990). This perspective confuses the distinction made in the UCC between disclaimers of warranties and limitations of remedies. . . . "[T]hese two devices in theory constitute two separate mechanisms for eliminating responsibility for produce quality." *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 952-53 (Ind. Ct. App. 1982). "A disclaimer or modification of warranty eliminates the quality commitment. It limits the circumstances in which the seller or manufacturer may be deemed to be in breach of warranty." *Id.* "A limitation of remedy, on the other hand, acknowledges the quality commitment but restricts the remedy available once a breach has been established." *Id.*; *see also F.C. Finance Corp. v. Murphies*, 632 F.2d 413, 420 (5th Cir. 1980) ("Warranty disclaimer is a defense to the existence of a cause of action, while the consequential damage limitation merely restricts remedies once the breach has been established.").

*Iron Dynamics v. Alstom Power, Inc.*, No. 1:06-CV-357, 2007 WL 3046430, at *4 (N.D. Ind. Oct. 15, 2007) (footnote and citations omitted).

The same problem recognized in the *Iron Dynamics* case—the failure to distinguish between promises and remedies—is present here. If the repair and replace remedy for breach of the express warranty failed of its essential purpose, then the code would allow Meyers to seek other remedies for *breach of the*

*express warranty.* However, the failure of the repair and replace remedy for breach of the express warranty does not revive otherwise disclaimed implied warranties. *See, e.g.*, *Patterson Oil Co., Inc v. Verifone*, Inc., No. 2:15-CV-4089, 2015 WL 6149594, at *6 (W.D. Mo. Oct. 19, 2015) ("Although Missouri courts have not interpreted this clause, other jurisdictions have read its language to distinguish between a remedy limitation, which can fail of its essential purpose, and a valid warranty disclaimer, which cannot."); *Yorktown Urology, P.C. v. Neuisys, LLC*, No. 1:CV-10-0644, 2010 WL 4054178, at *1-2 (M.D. Pa. Oct. 14, 2010) (holding failure of limited remedy does not revive disclaimed implied warranties but only allows for additional remedies on the claim for breach of the express warranty); *Precision Aggregate Prods., L.L.C. v. CMI Terex Corp.*, No. CIV-06-1146-L, 2007 WL 3232187, at *5 (W.D. Okla. Oct. 31, 2007) ("The implied warranties of merchantability and fitness for a particular purpose are warranties-that is, promises-not remedies under the Code. The implied warranties were properly disclaimed under the Code and cannot be revived based on the alleged failure of the limited remedy."); *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1047-48 (D. Kan. 1990) ("Despite any argument that the limited remedy failed of its essential purpose, plaintiff is bound by the written exclusion of the express and implied warranties, and its only warranty claim is based on the express warranty in the Basic Agreement against defects in material and workmanship.").

D.

Meyers argues the warranty disclaimers are substantially and procedurally unconscionable. "A contract is unconscionable where no person in his or her

right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Bartlett Grain Co. v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013) (quoting *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011)). The doctrine of unconscionability encompasses substantive unconscionability and procedural unconscionability. Substantive unconscionability "includes 'harsh, oppressive, and one-sided terms.'" *Id.* (citation omitted). While, procedural unconscionability "includes the existence of factors such as 'sharp practices[,] the use of fine print and convoluted language, as well as a lack of understanding and inequality of bargaining power.'" *Id.* (alterations in original) (quoting *In re Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008)).

The unconscionability of a contract or clause is "determined at the time it was made." *Id.* (citing Iowa Code § 554.2302(1); *C & J Vantage Leasing Co.*, 795 N.W.2d at 81.). "In determining whether a contract is unconscionable, we examine factors of 'assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness.'" *Id.* (citation omitted). Under Iowa Code section 554.2302(1),

> [i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The doctrine of unconscionability, however, does not rescue people from bad bargains. *Bartlett Grain Co.,* 829 N.W.2d at 27. *See, e.g.*, *C & J Vantage Leasing Co.,* 795 N.W.2d at 81 (holding there was no procedural

unconscionability or substantive unconscionability when an intelligent business entity had an opportunity to read the agreement, no unequal bargaining power existed, and contract was not overly oppressive).

Here, the disclaimers in the warranty are not substantively or procedurally unconscionable. Jim Meyers is an experienced businessman with more than four decades of experience in the industry. There is no evidence of inequality of bargaining power. The disclaimers do not supply harsh, oppressive, or one-sided terms. Further, the disclaimers are written in bold capital letters. There is no fine print or convoluted language. Meyers acknowledged receipt of the warranties and the opportunity to read them. Therefore, the disclaimers of the warranty are not substantially or procedurally unconscionable. *See, e.g., Brunsman v. DeKalb Swine Breeders, Inc.*, 952 F. Supp. 628, 634 (N.D. Iowa 1996) (holding warranty limitations were not unconscionable where there was no showing of pressure to sign contract or evidence of unfair bargaining); *Bruce*, 933 F. Supp. at 792 (holding limitation not unconscionable where the parties were experienced and sophisticated in the industry).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**