# IN THE COURT OF APPEALS OF IOWA

No. 18-0774
Filed February 19, 2020

**J&R TRANSPORT, INC.,**
    Plaintiff-Appellant,

**vs.**

**NAVISTAR, INC. and THOMPSON TRUCK AND TRAILER, INC., f/k/a HAWKEYE TRUCK AND TRAILER,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Linn County, Christopher L. Bruns, Judge.


        J&R Transport, Inc. appeals from a summary-judgment ruling. **AFFIRMED.**


        Lawrence R. Lassiter of Miller Weisbrod, LP, Dallas, Texas, and Tim Semelroth, Cedar Rapids, for appellant.

        Clayton J. Callen and Jeffrey S. Patterson of Hartline Dacus Barger Dreyer, LLP, Dallas, Texas, and Mark E. Weinhardt, Danielle M. Shelton, and Elisabeth A. Archer of The Weinhardt Law Firm, Des Moines, for appellees.


        Heard by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

J&R Transport, Inc. (J&R) appeals the dismissal of claims stemming from its purchase of heavy-duty trucks. We affirm the district court.

**I. Background Facts and Proceedings**

J&R is a trucking company owned by John and Regina Herbst. Navistar, Inc. manufactures heavy-duty trucks. Thompson Truck and Trailer, Inc. (Thompson) is a retailer of heavy-duty trucks.[1]

In 2010, new federal emissions regulations came into effect. They required manufacturers of heavy-duty trucks to lower their nitrogen oxide emissions.

Different manufacturers used different strategies to meet the new standards. Most manufacturers employed a strategy known as Selective Catalytic Reduction or "SCR." Navistar chose a different path. It focused on refinements to its trucks' exhaust gas recirculation (EGR) systems. This approach was referred to as an "EGR-only" strategy. Navistar employed this strategy on engines dubbed "Maxxforce."

There is evidence that the EGR-only strategy produced excess heat and soot. This led to increased warranty claims for Navistar.

In 2011 and 2012, J&R purchased several Navistar "Prostar" trucks. All were equipped with Maxxforce engines.

J&R purchased eleven of the Prostar trucks from Thompson between December 2011 and June 2012.[2] Each of those trucks had roughly 100,000 to

---

[1] Thompson was previously known as Hawkeye Truck and Trailer.
[2] One of the trucks purchased went to an individual who accompanied John Herbst when J&R purchased the trucks.

110,000 miles when purchased. J&R purchased them "as is." Then J&R purchased nine new Prostar trucks from a different retailer in 2012.

With each truck, J&R received Navistar's written "Limited Warranty." J&R purchased optional service contracts to extend the time and mileage during which the warranties would remain in effect.

Each warranty included this statement of coverage:

> Navistar, Inc. at its option, will repair or replace any part of this vehicle which proves defective in material and/or workmanship in normal use and service, with new or ReNEWed parts, for the first 12 months from the new vehicle delivery date, or for 100,000 miles (160,000 Km) plus the miles/kilometers at the time the vehicle had the DTU (delivered to user) performed, whichever expiration occurs first. Exceptions are listed below under What Is Not Covered.
>      This warranty is automatically transferred to subsequent owners at no charge. Visit your local International Dealer for name and address change information.

Each warranty also specified what was not covered, including "[l]oss of time or use of the vehicle, loss of profits, inconvenience, or other consequential or incidental damages or expenses" and "[r]eplacement of defective parts with parts other than those provided by Navistar, Inc." And each warranty included this disclaimer:

> NO WARRANTIES ARE GIVEN BEYOND THOSE DESCRIBED HEREIN. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED. THE COMPANY SPECIFICALLY DISCLAIMS WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE USER/PURCHASER, AND ALL OTHER OBLIGATIONS OR LIABILITIES. THE COMPANY FURTHER EXCLUDES LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES ON THE PART OR THE COMPANY OR SELLER. No person is authorized to give any other warranties or to assume any liabilities on the Company's behalf unless made or assumed in writing by the Company; and no other person is authorized to give any warranties

or to assume any liabilities on the seller's behalf unless made or assumed in writing by the seller.

Each of the Prostar trucks required repairs while J&R owned them. The EGR system had to be repaired once on seven of the trucks, twice on twelve of the trucks, and three times on one truck. After each repair stop, the trucks returned to service.

Ultimately, J&R accumulated between 300,000 and 500,000 miles on each of the Prostar trucks. They averaged approximately 106,000 annual miles per year. This was normal for J&R's total fleet of trucks, which averages between 100,000 and 120,000 miles per year.

In February 2015, J&R sold its 2011 ProStar trucks. Between April 2016 and December 2016, J&R sold its 2012 ProStar trucks.

In December 2015, J&R brought this action against Navistar and Thompson.[3] J&R alleged several causes of action: (I) breach of express warranty; (II) breach of implied warranty; (III) breach of contract; (IV) "actual fraud/fraud by nondisclosure/fraudulent concealment/fraudulent inducement"; and (V) "constructive fraud/negligent misrepresentation."

Navistar and Thompson moved for summary judgment. The district court granted the motions as to counts I, II, III, and V. As to count IV, the court granted the motions as to some allegations but denied it as to others. Then J&R voluntarily dismissed its remaining claims and filed this appeal.

---

[3] The action also included other plaintiffs and defendants, but they are not parties to this appeal.

**II. Standard of Review**

"We review a district court's summary judgment ruling 'for correction of errors at law.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018) (quoting *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 199 (Iowa 2007)).  Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Iowa R. Civ. P. 1.981(3).

**III. Analysis**

Our rules require the appellant to state the issues presented for review. Iowa R. App. P. 6.903(2).  J & R states the issues this way:

> 1.  Did the district court erroneously grant summary judgment on J&R Transport's breach of express warranty claim against Navistar because there is ample evidence that the limited warranty failed of its essential purpose and Navistar did not perform all repairs as required by the warranty?
> 2.  Did the district court erroneously grant summary judgment on J&R Transport's breach of contract claims against Navistar and Thompson because there is undisputed evidence that Navistar and Thompson failed to fulfill their obligations under the agreements?

For purposes of analysis, we break these issues down into three questions:

- Is there a genuine issue of material fact as to whether Navistar failed to perform all repairs required by the warranties?

- Is there a genuine issue of material fact as to whether one or more warranties failed of their "essential purpose[s]"?

- Is there a genuine issue of material fact as to whether Thompson failed to fulfill its obligations under an agreement?

We address each in turn.

**A. Did Navistar fail to perform repairs required by any warranty?**

J&R contends Navistar breached one or more warranties by denying coverage for repairs that were, in fact, covered by the warranty. As support for this claim, J&R points to an affidavit from its president, John Herbst. In it, Herbst identifies ten instances in which repairs "should have been covered under the applicable warranty and/or service contract but they were not."

As Defendants correctly point out, however, Herbst's affidavit only shows *his beliefs* about whether repairs should have been covered. It provides insufficient detail to determine whether the issues submitted for repair were *actually* covered by the limited warranty.[4] So, like the district court, we conclude there is no genuine issue of material fact as to whether Navistar failed to perform all required repairs.

**B. Did a warranty fail of its essential purpose?**

J&R contends that, even if Navistar performed warrantied repairs when asked to do so, there is still a fact question as to whether additional remedies should be available to J&R because the warranties "fail[ed] of their essential purpose." We disagree.

J&R's theory depends on Article 2 of Iowa's Uniform Commercial Code (UCC). It governs sales of "goods," like the trucks at issue. Iowa Code § 554.2102 (2015). As a general rule, the Code permits parties to limit the remedies available to buyers. *See id.* § 554.2719(1)(a). Indeed, the Code expressly authorizes

---

[4] Nor did we find sufficient detail elsewhere in the record. Nothing in the provided documents shows that servicing denied under the warranty should have been covered. Rather, they merely show J&R sought warranty coverage for some indeterminate reason.

agreements, like those at bar, that "limit[] the buyer's remedies . . . to repair and replacement of" defective parts. *Id.* But the Code also permits the buyer to seek additional remedies, such as damages, if "circumstances cause an exclusive or limited remedy to fail of its essential purpose." *See id.* § 554.2719(2); *R.J. Meyers Co. v. Reinke Mfg. Co.*, 885 N.W.2d 429, 438 (Iowa Ct. App. 2016) ("In other words, where the limited remedy fails, then the buyer may avail itself of other remedies set forth in the UCC, including damages."); *Midwest Hatchery & Poultry Farms, Inc. v. Doorenbos Poultry, Inc.*, 783 N.W.2d 56, 64 (Iowa Ct. App. 2010) (noting that, "[b]ecause the limitation of remedies provision failed in its essential purpose, a consideration of damages reverts to section 554.2714(1), which provides for the recovery of damages for 'the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable'").

"A remedy's essential purpose 'is to give to a buyer what the seller promised [the buyer].'" *Midwest Hatchery*, 783 N.W.2d at 62 (citation omitted). "The focus of analysis 'is not whether the remedy compensates for all damage that occurred, but that the buyer is provided with the product as seller promised.'" *Id.* at 62–63 (citations omitted). "Where repair or replacement can give the buyer what is bargained for, a limitation of remedies does not fail of its essential purpose." *Id.* at 63.

J&R contends the trucks' warranties failed of their essential purpose because the trucks required a large numbers of repairs, including some repeated repairs of the EGR system. J&R notes all of the "trucks experienced at least one EGR cooler failure, twelve experienced a second failure, and one experienced a

third failure." And, in J&R's view, a defendant cannot satisfy a repair-or-replace warranty by simply repairing or replacing a part multiple times. Rather, in J&R's view, "[t]he multiple repair attempts by themselves give rise to a fact issue as to whether the limited warranties failed of their essential purpose."

Like the district court, we decline to adopt this line of reasoning. Navistar did not warrant a defect-free truck,[5] or a repair-free truck, or even a truck-with-few-repairs. *See, e.g.*, *Nebraska Popcorn, Inc. v. Wing*, 602 N.W.2d 18, 24 (Neb. 1999) ("A warranty to repair or replace does not guarantee proper performance. Rather, it anticipates potential defects and specifies the buyer's remedy during the stated period."). Rather, Navistar warrantied that it would repair or replace parts defective in material or workmanship. That is what the parties bargained for. And that is the bargain Navistar performed. So we cannot say any warranty failed of its essential purpose.

---

[5] J&R argues that, because Navistar honored its warranty by "perform[ing] repair or replacement work pursuant to the Limited Warranty" on EGR parts "that J&R Transport contends were defectively designed," Navistar effectively modified the warranties to provide coverage for faulty design. *See* Iowa Code § 554.1303(6) ("Subject to section 554.2209, a course of performance is relevant to show a waiver or modification of any term inconsistent with the course of performance."). J&R has not cited, and we have not found, any case to support this line of reasoning. And we believe it is contrary to general principles of warranty law, under which warranties for materials and workmanship do not cover defects. *See, e.g.*, *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) (concluding "a design defect cannot also be a defect in material and workmanship" and collecting supporting cases); *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 933 (D. Minn. 2018) ("The case law overwhelming holds that design defects are not covered by warranties for materials and workmanship."). We also doubt the law imposes a "Catch 22" by requiring sellers to choose between (1) honoring their repair-or-replace warranty and, by doing so, expanding the warranty to cover design defects; or (2) breaching their repair-or-replace warranty by refusing to replace parts that are alleged to be defectively designed.

J&R asks us to imagine a truck that "breaks down while being driven out of the repair shop." And, indeed, we can imagine a situation in which a vehicle could be so lacking in function—no matter what repairs are attempted—that a promise to repair is worthless. In those cases, a promise to repair may well fail of its essential purpose. *See R.J. Meyers Co.*, 885 N.W.2d at 437–38 (noting limited warranty may fail its essential purpose when "the seller is given a reasonable chance to correct defects and the equipment still fails to function properly").

That is not the record here. Looking at matters in the aggregate, we note J&R's trucks typically average between 100,000 and 120,000 miles per year. The Prostar trucks averaged 106,000 miles per year between their purchase in 2011 and 2012 and their sale in 2015 and 2016. So, even though the Prostar trucks required repairs and accompanying downtime, they still fell within the range of average performance J&R typically received from its trucks.

Moreover, we are mindful that each truck has its own warranty. As J&R explains in its brief, "Navistar gave a written 'Limited Warranty' . . . with each truck." So, if any warranty has failed of its essential purpose, it must be a *particular* warranty for a *specific* truck. *Tankstar USA, Inc. v. Navistar, Inc.*, No. 2017AP1907, 2018 WL 6199278, at *9 (Wis. Ct. App. Nov. 27, 2018) ("Tankstar's wholesale approach is both incorrect and insufficient to create a genuine issue of material fact as to whether the 'repair and replace' remedies in the various warranties failed of their essential purpose as to any specific truck."), *review denied*. Any other approach would improperly transform the parties' one-truck warranty agreements into a fleet warranty. *See Greene v. Heithoff*, No. 10-1608, 2011 WL 5515167, at *7 (Iowa Ct. App. Nov. 9, 2011) ("Since time immemorial,

the law of contracts provides that parties are entitled to bargain freely and that their agreements will be enforced in a court of law. Subject to narrow exceptions . . . courts do not modify the terms of the contract or use judicial creativity to supply terms that are absent from the written agreement. Courts generally enforce contracts as written, plain and simple." (alteration in original) (citation omitted)).

Yet J&R's brief provides little in the way of a truck-specific argument. As noted, its most specific contention is that each truck's EGR cooler failed once while "twelve experienced a second failure, and one experienced a third failure." But J&R offers little additional detail, such as the dates on which these problem occurred or the miles travelled between the occurrences. So, contrary to J&R's suggestions, we find no basis to conclude any of the trucks broke down "while being driven out of the repair shop." The worst scenario we can infer is that one truck had three significant repairs at unknown times and at unknown mileages. This is not enough to show J&R was not "provided with the product as seller promised." *See Midwest Hatchery*, 783 N.W.2d at 62–63 (citation omitted). This is not enough to show repair could not "give the buyer what [was] bargained for," a truck of reasonable usefulness. *See id.* at 63. Like the district court, we cannot conclude there is a jury question as to whether any warranty "fail[ed] of its essential purpose."

**C. Did Thompson fail to fulfill its obligations an agreement?**

J&R argues "Thompson breached its agreements to repair the trucks." But we cannot locate a Thompson repair agreement in the record. And J&R provides no record citation for it. This failure serves as a waiver. *See* Iowa R. App. P. 6.903(2)(g)(3).

Even assuming a repair agreement could be located in the record, this court is powerless to act because the district court did not rule on the issue J&R raises now. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Rather, the district court only considered whether Thompson breached the sales agreement by failing to provide trucks "free from defects." The court made no ruling as to whether Thompson breached contracts *to repair* trucks. We decline to consider this question for the first time on appeal.

J&R also challenges the district court's determination that Iowa Code section 554.2608(1)(b) does not apply. Section 554.2608 states in pertinent part:

> The buyer may revoke the buyer's acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it
> . . . . .
> without discovery of such nonconformity if the buyer's acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

J&R focuses on the phrase "substantially impairs its value." J&R emphasizes that the poor performance of the EGR engine reduced the resale value of the Prostar trucks.

But the statute also requires a showing of "nonconformity." *See* Iowa Code § 554.2608(1). Here J&R bargained with Thompson for trucks in "as is" condition.[6]

---

[6] "'[A]s is' is readily understood to mean the buyer is taking the item in its present condition . . . ." *Cannon v. Bodesteiner Implement Co.*, 903 N.W.2d 322, 330 (Iowa 2017).

That is precisely what J&R received. There was no nonconformity. And section 554.2608(1) does not apply.[7]

## IV. Conclusion

The district court was correct in granting summary judgment in favor of Thompson and Navistar.

**AFFIRMED.**

---

[7] Moreover, section 554.2608(2) limits revocation to a reasonable period of time after discovery of some eligible nonconformity. Although there is no definitive measure of "reasonable time," we are confident it does not extend to beyond the buyer's resale of the goods to a third party, as occurred here.